Argued September 7, reversed October 25, 1961

# A. C. DUTTON LUMBER CORPORATION *v.* STATE TAX COMMISSION

### 365 P. 2d 867

*Richard Rink,* Assistant Attorney General, Salem,

argued the cause for appellants. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Maurice O. Georges,* Portland, argued the cause for respondent. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

WARNER, J.

The plaintiff, A. C. Dutton Lumber Corporation, appealed to the circuit court for Multnomah county from a determination of the defendant Tax Commission that there was a deficiency in plaintiff's 1958 Oregon corporation excise tax. The appeal was taken pursuant to ORS 314.460 and proceeds as a suit in equity. The Commission's demurrer to the complaint for want of sufficient facts was overruled. Thereafter, the Commission filed its answer which was followed by plaintiff's motion for judgment on the pleadings. From an order granting the motion, the Tax Commission brings this appeal.

Dutton is a New York corporation engaged in the wholesale lumber business conducted in several states. During the tax year 1958 and prior thereto its activities were confined to the purchase of considerable quantities of lumber in this state with some resale of the same in Oregon.

When the income of a corporation is derived from business done both within and without the state, the determination of its net taxable income based upon its business done within the state may be made under rules and regulations adopted by the Commission,

which "fairly and accurately * * * reflect the net income of the business done within the state" (ORS 314.280(1)).① As stated in subsection (2) of that statute: "The provisions of subsection (1) * * * dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. * * *"

Acting under the authority conferred upon it, the Commission adopted its Regulation 4.280(1)-(A). This regulation first recognizes that: "The method to be used in determining the portion of the total income that is properly allocable to this state depends upon the circumstances in each case, and no rule of universal application can be stated." This is followed by a provision (4:280(1)-(B)) to the effect that if detailed and complete evidence substantiating the fact that the application of the regulations reaches an unreasonable result, the method for the allocation of a particular taxpayer's income will be revised. This part of the regulation reflects the provision of subsection (2) of ORS 314.280, supra, reading:

"* * * Any taxpayer may submit an alterna-

---

① ORS 314.280: "(1) If the gross income of a corporation or a non-resident individual is derived from business done within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the commission that method will be accepted as the basis of allocation."

tive basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the commission that method will be accepted as the basis of allocation."

Regulation 4.280(1)-(B), which is quite long and detailed, then sets up the formula for apportionment generally known as a three-factor formula. It takes into consideration a property, a wage and a sales factor, each of which factor contains provisions for its modification.

In usual application, there is first found the percentage which the taxpayer's Oregon property bears to its total property. The same is done with respect to wages paid and sales made in Oregon. The three percentages obtained for Oregon are then totaled and divided by three. The result of this division is the percentage of the taxpayer's net income which is apportioned to this state.

That part of Regulation 4.280(1)-(B) relating to the use of the "sales factor" also makes the following provision for its modification, by substituting for "sales" amounts reflecting its "purchases." It reads:

"If a taxpayer carrying on a business both within and without the state is engaged, either exclusively or primarily, in a purchasing activity within this state, then purchases are substituted in the formula for sales."

In computing the corporation's 1958 excise tax, Dutton allocated a portion of its income to Oregon by use of the formula giving weight to the factors of property, wages and *sales* within and without the state of Oregon. Upon this basis it was determined that the net income of the lumber company allocable to this state in 1958 was $3,779.88, an amount equal

to 1.6315 per cent of its total net income of $231,681.20, and producing a tax of $226.79 for that year.

The Commission, however, in its computation invoked the foregoing modification provision of the regulation and substituted the *purchase factor* for the *sales factor* employed by the plaintiff, thus giving weight to plaintiff's property, wages and *purchases,* both within and without the state. Under the formula as used by the Commission, plaintiff's net income allocable to Oregon for 1958 becomes $26,299.75, an amount equaling 11.3517 per cent of its total net income of $231,681.20. This, in turn, results in a claimed tax of $1,577.99, as against the tax of $226.79, as figured by plaintiff.

In the formula followed by plaintiff the figures for its gross sales appear as $25,168,445.75, of which $528,076.34 or 2.0982 per cent were in Oregon. In the Tax Commission calculations, $22,175,527 represents plaintiff's total purchases. Of this total amount $6,931,806 or 31.2588 per cent were made in this state.

The parties do not dispute the correctness of their respective mathematical calculations of taxes due. Except for the use of the "sales" factor by one, and the "purchase" factor by the other, their figures are identical. The only issues presented by the appeal are whether the formula employed for the determination of allocable income should have included the factor of *sales,* as used by plaintiff, or the factor of *purchases,* as applied by the Commission.

Dutton represents that the use of the "purchase" factor is not authorized by ORS 314.280, supra, and if authorized and applied the statute is rendered unconstitutional. We find no merit in any of these contentions.

ORS 314.280, supra, requires a method of alloca-

tion under regulations which will "fairly and accurately * * * reflect the net income of the business done within the state," or, as said in *Butler Bros. v. McColgan,* 315 US 501, 86 L ed 991, 995, 62 S Ct 701, the amount " 'reasonably attributable' to the business done there." Such is the test of an allocation formula approved by the United States Supreme Court. *Butler Bros. v. McColgan,* supra, *Bass, Ratcliff & Gretton v. State Tax Commission,* 266 US 271, 69 L ed 282, 45 S Ct 82; *Ford Motor Co. v. Beauchamp,* 308 US 331, 84 L ed 304, 60 S Ct 273. Hence, if the formula survives that test, any constitutional questions are at an end. *Butler Bros. v. McColgan,* supra; *International Harvester Co. v. Evatt,* 329 US 416, 91 L ed 390, 395, 67 S Ct 444.

■ To rebut the presumption that the formula employed produced a fair result, the burden is on the taxpayer to make its oppression manifest "by clear and cogent evidence." *Norfolk & W. R. Co. v. North Carolina,* 297 US 682, 80 L ed 977, 982, 56 S Ct 625, and that " 'more taxes have been exacted than in equity and good conscience should have been paid'." *Pacific Fruit Express Co. v. McColgan,* 67 Cal App 2d, 93, 153 P2d 607, 609; *El Dorado Oil Works v. McColgan,* 34 Cal2d 731, 215 P2d 4, 13, appeal dismissed 340 US 801, 95 L ed 589, 71 S Ct 52; *Norton Co. v. Dept. of Rev.,* 340 US 534, 95 L ed 517, 71 S Ct 377. But here we labor without any evidence and no factual matter except that which may be gleaned from the pleadings.

Existing methods for allocating income for state excise or privilege taxes, measured by net income, are exceedingly diverse. Seemingly, there is no one complete and right rule of apportionment satisfying the needs of all states. Notwithstanding the number of dif-

ferent rules, all upon analysis may work substantial justice.

Plaintiff, as well as the trial court, sought to clinch their respective contentions by resorting to hypothetical situations to demonstrate what might happen in another state as possible tax duplications. We find our answer to these endeavors in *Northwestern States Portland Cement Co. v. Minnesota,* 358 US 450, 3 L ed2d 421, 79 S Ct 357, 67 ALR2d 1292, 1303, where the court said:

> "While the economic wisdom of state net income taxes is one of state policy not for our decision, one of the 'realities' raised by the parties is the possibility of a multiple burden resulting from the exactions in question. The answer is that none is shown to exist here. This is not an unapportioned tax which by its very nature makes interstate commerce bear more than its fair share. * * * There is nothing to show that multiple taxation is present. *We cannot deal in abstractions.* In this type of case the taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense. This they have failed to do." (Emphasis supplied.)

Nor is there anything in the pleadings to warrant the conclusion found in the trial court's opinion that in "1954, all states except North Dakota used sales or gross receipts as at least one factor in their apportionment formula." California by statute authorizes but does not require the use of five factors, including "purchases." See *El Dorado Oil Works v. McColgan,* supra (215 P2d at 7).

Our own research leads us back to a citation supplied by the Commission. It is an article by Arthur D. Lynn, Jr., in 18 Ohio State Law Jrnl, p 84 (1957), entitled "Formula Apportionment of Corporate In-

come for State Tax Purposes." It contains the most exact statement that we can discover concerning the number of states employing factor formulae and their distinctive characteristics. At page 90, Professor Lynn quotes the following from a summary prepared by the Council of State Governments (1954):

"There is some degree of uniformity among the states with regard to the formulae used for apportionment. Almost two-thirds of the jurisdictions levying these taxes use a three-factor formula, and about one-half of them employ a formula made up of sales, payrolls and property. The following table indicates the formulae now in use and the frequency of their use:

"Three Factors—Sales (gross receipts), payrolls, property ........ 14 states
Three Factors—Sales (gross receipts), costs, property ................ 5 states
Three Factors—Sales, payrolls, average inventory .......................... 1 state
Two Factors—Sales (gross receipts), property ............................ 2 states
Two Factors—Cost of Manufacturing, property ................................................ 1 state
Two Factors—Business, property .... 1 state
One Factor—Sales (gross receipts) .. 3 states
Combinations of the above ............. 5 states

"The greatest differences among state corporate tax laws occur in the definition of these factors. Even though states may use the same formulae, they often define the factors differently."

See, also, Altman and Keesling, Allocation of Income in State Taxation (2d ed 1950), 102-105, 133.

■■ The theory of taxation is: that taxes are imposed in return for the general advantages and protection which the government affords the taxpayer and his

property. The excise tax of this state is a tax measured by or according to net income earned in Oregon (after deduction for ad valorem personal property taxes paid to Oregon governmental units). It is imposed upon business corporations for the privilege of carrying on or doing business in this state (ORS 317.010(9)). "Doing business," as used in said section, means any transaction in the course of business. ORS 317.010(8); *Welch Holding Co. v. Galloway*, 161 Or 515, 525, 89 P2d 559; *Hines Lumber Co. v. State Tax Commission*, 215 Or 453, 469, 336 P2d 75. The amount of the tax is ascertained according to methods authorized by ORS 314.280, supra, and as to foreign corporations by the apportionment method "under rules and regulations adopted by the commission."

 It is a judicially recognized fact that as a matter of practical tax administration, no method of allocation can precisely determine the exact amount of income attributable either to any given geographic area or to any given part of a series of business transactions culminating in the realization of a profit, and any honest effort in that regard must be more or less arbitrary and fictitious. *Gorham Mfg. Co. v. Travis*, 274 F 975, 978 (DC SD NY 1921). In *International Harvester Co. v. Evatt*, supra (91 L ed at 395), the court, in sustaining the validity of a franchise tax assessment, said: the "practical impossibility of a state's achieving a perfect apportionment of expansive, complex business activities * * * [makes] 'rough approximation rather than precision' * * * sufficient" in the formula allocation of income from a unitary business. See, also, *El Dorado Oil Works v. McColgan*, supra (215 P2d at 10); *Hines Lumber Co. v. State Tax Commission*, supra (215 Or at 480).

Mr. Justice Hughes in *Hans Rees' Sons v. North Carolina*, 283 US 123, 75 L ed 879, 905, 51 S. Ct 385, observed:

> "* * * The difficulty of making an exact apportionment is apparent and hence, when the state has adopted a method not intrinsically arbitrary, it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases. * * *"

As the record has been made and analyzed in the light of plaintiff's contentions, the Commission's allocation formula based on a three tax factor base, including purchases instead of sales, appears in its application to plaintiff's business to have been an honest effort to apportion to Oregon that part of plaintiff's net income fairly attributable to its business done in this state so as to be free from constitutional objection.

The plaintiff lumber company concedes that "purchases" are an element in producing net income and, therefore, may be used as an apportionment factor unless, as it contends, it produces a result which is unfair or inequitable or violates some constitutional provision.

Dutton Corporation is not primarily a producer or manufacturer of lumber. It is a buyer for purposes of resale. The Commission in using the "purchase factor" recognized an economic factor of which we took cognizance in *Hines Lumber Co. v. State Tax Commission,* supra, when we said at p 456:

> "* * * In short, it is clear that all profit from the sale of a wood product may not be relegated to the state in which the product was only manufactured or purchased, since a sale is essential to the realization of profit; *it is also clear that all profit may not be relegated to the state*

> *in which the product was only sold, since a sale could never have been consummated unless the product was first acquired either through manufacture or purchase. \* \* \*"* (Emphasis supplied.)

Purchases should definitely have a bearing on the profit if made at favorable prices.

Although purchases made by plaintiff constitute but one element leading to net income, it is apparent that it is a large element and, therefore, appropriate as one of the apportionment factors. In the economy of the Dutton Lumber Corporation, purchases reflect the dominant business activity of that corporation in this state and in the total amount of $6,931,806. We have already noticed this is slightly over 31 per cent of its total purchases of $22,175,527 in the year 1958. In contrast, its gross sales in this state totaled $528,076.34 or 2.0982 per cent of its total sales of $25,168,445.74.

While the Tax Commission is not admonished by law or regulation to choose its business factors in terms of their relative size as they appear in this state, yet we are mindful that it has been held that the taxing power exerted by the state should bear some "fiscal relation to protection, opportunities and benefits given by the state." *Wisconsin v. J. C. Penney Co.,* 311 US 435, 85 L ed 267, 270, 61 S Ct 246, 130 ALR 1229; *Air-Way Electric Appliance Corp. v. Day,* 266 US 71, 69 L ed 169, 177, 45 S Ct 12. Such benefits and such a fiscal relationship are especially evident here, not alone in terms of the relatively small amount of Dutton's sales in Oregon in comparison with its purchases in this state, but rather attain a very realistic importance when we give consideration to the extent and character of the pur-

chases made in this state and the benefits accruing. "[T]he real question [is] whether what the State is exacting is a constitutionally fair demand by the State for *that aspect of the interstate commerce to which the State bears a special relation,*" says Mr. Justice Frankfurter in *Central Greyhound Lines v. Mealey,* 334 US 653, 92 L ed 1633, 1640, 68 S Ct 1260. (Emphasis supplied.)

■ Both the circuit court and plaintiff attach considerable importance to *Gwin, White & Prince v. Henneford,* 305 US 434, 83 L ed 272, 59 S Ct 325 (1939), as being decisive in this matter. Quite the contrary is true. Indeed, it stands as authority for the very type of tax determined by apportionment present here. In *Gwin,* the state of Washington levied a privilege tax computed by taking into account the gross income of plaintiff corporation as derived from its entire business of interstate character without any attempt by the state to allocate any part thereof to business done within that state. This procedure has long been forbidden as a burden on interstate commerce. The court said: "Here the tax, measured by the entire volume of the interstate commerce in which appellant participates, *is not apportioned to its activities within the state.*" (83 L ed at 276) (Emphasis supplied.) The opinion in *Gwin* later referred to *Ficklen v. Taxing Dist.,* 145 US 1, 36 L ed 601, 12 S Ct 810, relied upon by the Washington Supreme Court in support of its decision favorable to the state in the *Gwin* case. The court observed (83 L ed at 277): "Although the tax, measured by gross receipts [in the Ficklen case], to some extent burdened the commerce, it was held that the burden did not infringe the commerce clause. Since *it was apportioned* exactly to the activities taxed, *all of*

*which were intrastate,* the tax was fairly measured by the value of the local privilege or franchise." (Emphasis supplied.) It is only when a given tax act of a state creates an unfair burden on interstate commerce, with the incidents of double taxation, that such legislation will be stricken. This is exemplified by *Gwin, White & Prince v. Henneford,* supra, and *J. D. Adams Mfg. Co. v. Storen,* 304 US 307, 82 L ed 1365, 58 S Ct 913 (1937). See, also, *Tax Commission v. Aldrich,* 316 US 174, 86 L ed 1358, 62 S Ct 1008, and *Butler Bros. v. McColgan,* supra (86 L ed 991).

We have been cited to no cases, nor has our own search discovered any, wherein one formula of apportionment has been held superior to another. The only limitation imposed upon a given state seeking to levy an excise tax against a foreign corporation doing business in that state is the rule laid down in *Butler Bros. v. McColgan,* to which we have above made reference, *i.e.,* that the formula of apportionment will "fairly and accurately * * * reflect the net income of the business done within the state." No preference of the kind or number of economic factors employed is indicated, if the result fairly and accurately indicates the income from "business done within the state."

Indeed, we learn from the *Butler Bros.* case that a multi-state corporation such as it was, can suffer a loss from its operations in a given state and yet have its overall net income from its interstate business surcharged by the use of a three-factor formula to determine the amount due as an excise tax for the privilege of doing business in that state, notwithstanding its activities there result in no profit to it.

We find nothing in the record to indicate that the method of apportionment which the Commission ap-

plied in this matter was inherently inequitable. To the contrary, it appears to us that it "fairly and accurately" reflects the net income of the business done by the Dutton Corporation in Oregon.

Plaintiff also asserts that the formula of the Commission is discriminatory and operates to deny it the equal protection mandated by the Fourteenth Amendment of the Constitution of the United States and is wanting in the uniformity of taxation required by § 32, Art I, of the Constitution of this state. We find this claim is without substance.

■ The equal protection of the laws required by the Fourteenth Amendment does not prevent states from resorting to classifications for the purposes of legislation and they have a wide range of discretion in that regard (*Safeway Stores v. Portland,* 149 Or 581, 595, 42 P2d 162; *Wittenberg v. Mutton,* 203 Or 438, 446, 280 P2d 359) if the classification is reasonable, not arbitrary and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that persons similarly situated shall be treated alike. This latitude is notably wide in classifications for purposes of taxation. *Royster Guano Co. v. Virginia,* 253 US 412, 64 L ed 989, 990, 40 S Ct 560. But equality of taxation does not require identical taxation. *Magoun v. Illinois Trust & Savings Bank,* 170 US 283, 42 L ed 1037, 18 S Ct 594; *Standard Lumber Co. v. Pierce,* 112 Or 314, 327, 328, 228 P 812.

■ Under Art I, § 32, of the Oregon Constitution, the legislature is granted specific authority to classify subjects for tax purposes, provided the classification is reasonable and the tax is applied uniformly within the class. *Fox v. Galloway,* 174 Or 339, 351, 148 P2d

922, and cases cited. See, also, *Standard Lumber Co. v. Pierce,* supra. Although the wide discretion as to classification retained by the legislature often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. *Safeway Stores v. Portland,* supra (149 Or at 595); *Methodist Book Concern v. State Tax Commission,* 186 Or 585, 594, 208 P2d 319, wherein we quoted with approval *Quaker City Cab Co. v. Pennsylvania,* 277 US 389, 72 L ed 927, 48 S Ct 553, to the same effect.

■ The plaintiff's charge of discrimination is predicated upon the modification feature of Regulation 4.280(1)–(B), supra, providing for the substitution of the "purchase" factor for the "sales" factor when the taxpayer is "engaged, either exclusively or primarily, in a purchasing activity within this state." This provision of the regulation classifies taxpayers engaged in multi-state transactions into two classes: (1) those whose business in this state is exclusively or primarily a purchasing activity; and (2) those corporations that are not primarily engaged in purchasing activities in Oregon.

We hold that the classification is reasonable and not arbitrary and rests upon grounds having a fair and substantial relation to the objects and purposes of the tax legislation.

The judgment on the pleadings is vacated and plaintiff's complaint dismissed.