Argued  March  7,  affirmed  August  14,  petition  for  rehearing
denied  September  18,  1962

# WHITE STAG MANUFACTURING COMPANY *v.*
# STATE TAX COMMISSION

373 P. 2d 999

*Randall S. Jones*, Portland, argued the cause for appellant. With him on the brief were Jones & Brown, Portland.

*Gerald F. Bartz*, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, and Alfred B. Thomas, Assistant Attorney General, Salem.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

WARNER, J.

The plaintiff, White Stag Manufacturing Company, seeks to set aside a deficiency assessment made by the defendant Oregon Tax Commission for plaintiff's excise taxes for its fiscal years 1956 and 1957. From a decree dismissing plaintiff's complaint, it appeals.

The Commission's determination is made under the authority of ORS 314.280 and its allocation formula established by its Regulation 4.280(1)–(B) (formerly Regulation 7.180(1)–(B)), promulgated pursuant to that statute.

Plaintiff is an Oregon corporation engaged in the manufacture and sale of sportswear and canvas products, with its principal office in Portland. It owns plants in Portland, San Francisco and Amsterdam,

New York, and is conducted as a unitary enterprise both without and within the state of Oregon.

Plaintiff supplemented the output of its three owned plants from time to time by contracting for the production of some items of its merchandise by third parties (hereinafter called "contractors") under arrangements whereby plaintiff furnishes the designs and all the material, except thread. The contractors supply the thread, labor and plants.

During the tax years 1956 and 1957 plaintiff utilized approximately 27 or 29 of these contractors, located in various parts of the United States, in the manufacture of some of its mercantile items. They are entirely independent organizations in no way connected with plaintiff except to fill its merchandise orders from time to time. Nine to 10 of this number manufactured exclusively for plaintiff. The prices paid to the contractors were the result of negotiations with each of them.

White Stag being a corporation, deriving its income from business done within and without the state of Oregon, the determination of its net income allocable to this state for tax purposes is made in accordance with rules and regulations of the defendant State Tax Commission, as authorized by ORS 314.280.

The Commission applied its Regulation 4.280(1)–(B), supra, to the returns of plaintiff covering its operations for the tax years in question. Under this formula (sometimes called the Massachusetts three-factor formula), the net taxable income apportioned to Oregon is determined by giving equal weight to three factors, i.e., the corporation's property, wages and sales. This is accomplished by finding what per cent each Oregon factor of that kind bears to the corresponding total factor of the same kind and then

adding the percentages derived for the Oregon factors and dividing the result by three. The resulting percentage represents that part of the corporation's net income allocable to and taxed in this state after deducting taxpayer's payments for tax on personal property in Oregon. It can also be expressed in the following form:

$$\text{Apportionable Net Income} \times \frac{\frac{\text{Ore. Property}}{\text{Total Property}} + \frac{\text{Ore. Wages}}{\text{Total Wages}} + \frac{\text{Ore. Sales}}{\text{Total Sales}}}{3} = \text{Apportioned Net Income}$$

In the application of the foregoing formula for the years 1956 and 1957, the parties are in accord as to the proper figures employed by the state as to the sales factor, both for Oregon and everywhere. The point of difference, and, indeed, the only real issue presented on this appeal, arises from the employment by the plaintiff of different figures in the wage factor and property factor than those used by the Commission.

Inasmuch as the basic method for reckoning the wage and property factors, as made by plaintiff, is the same for both tax years, we use the figures of plaintiff in its return for the year 1957 and the figures of the Commission for each corresponding item for the same year to graphically indicate the conflict arising in their respective computations.

The percentage of net income allocable to Oregon in 1957 as computed by plaintiff is:

| Factor | Oregon Totals | Total Everywhere | Percent Oregon |
|---|---|---|---|
| 1—Property | $2,949,702.05 | $ 7,230,743.25 | 40.7928 |
| 2—Wages | 1,905,662.10 | 3,731,711.13 | 51.0667 |
| 3—Sales | 1,033,762.48 | 14,009,148.77 | 7.3792 |
| Total Percentages | | | 99.2387 |
| Oregon or Average Percentage | | | 33.0796 |

The per centum of the Company's net income allocable to this state in 1957 is figured by the Commission as follows:

| Factor | Oregon Totals | Total Everywhere | Percent Oregon |
|---|---|---|---|
| 1—Property | $2,917,361.90 | $ 5,982,288.83 | 48.7667 |
| 2—Wages | 1,833,319.85 | 2,292,655.20 | 79.9649 |
| 3—Sales | 1,033,762.48 | 14,009,148.77 | 7.3792 |
| Total Percentages | | | 136.1108 |
| Oregon or Average Percentage | | | 45.3703 |

The fundamental difference between the foregoing calculations of plaintiff and the Commission is found in the figures used by the respective parties as plaintiff's "Everywhere" total wages and plaintiff's "Everywhere" total property. For its total wages, plaintiff uses a figure $1,439,055.93 greater than found in the Commission's application of the formula. Plaintiff uses as the value of its total property factor one exceeding the Commission's valuation by $1,248,-454.42.

It, therefore, becomes evident, if plaintiff's figures are adopted for the wage and property factors, the "average percentage" of the three factors; that is, the percentage of plaintiff's net income allocable to Oregon, is substantially less than it would be if the Commission's figures prevail. Following the figures used by plaintiff, that average would be 26.5839 per cent for 1956 and 33.0796 per cent for 1957. If, on the other hand, the Commission's figures are fairly compiled, plaintiff's tax for these years would be assessed on 42.3313 per cent of its net income for 1956 and on 45.3703 per cent for 1957.

As previously indicated, plaintiff's tax return for 1956 follows the same method of calculation in the

same factor categories as found in 1957 with, of course, some variants in amounts between the two years. But the reason which plaintiff assigns for the amounts it employs for the totals of the property factor and the wage factor in each tax year is identical for each annual return.

Plaintiff's figures in excess of those utilized by the Commission are extracted from the aggregate of its payments made to the contractors for the merchandise they furnish plaintiff on its order. The theory of plaintiff's case as expressed in its complaint is:

"* * * Plaintiff pays said third parties fees for such services, which fees represent a charge to plaintiff based upon wages paid by said third party, the use of the third party's equipment and facilities, and the overhead costs and profit of the third party, and to the extent of said wages and a reasonable rent for said use, said fees are actually wages and rent paid by plaintiff."

In support, plaintiff argues that its inclusion of wages paid by the contractors and value of property used by its third-party contractors overcomes what it calls the unfair and inequitable allocation made by the Commission of "an excessive and unreasonable portion of plaintiff's net income."

These excessive wage and property amounts were obtained by plaintiff by estimating what its contractors paid for contractors' labor in making garments for plaintiff. This it did by assuming that 70 per cent of the total cost of merchandise bought from the contractors was contractors' labor cost. In arriving at this estimate they adopted as a basic percentage an estimate of plaintiff's cost in Portland paid its employes for labor and its property charges allocable

to production. Plaintiff, by using these estimates, further assumes that the percentages used prevail universally in the United States, notwithstanding that some of the contractors' plants are located in such diverse places as Maine, New Hampshire, Georgia and Oklahoma. It makes no adjustments whatever for any differential because of wage scales and cost of doing business in the areas in which its contractors operated.

We have already observed that the prices paid by plaintiff to each of its many contractors are the result of negotiations had in most instances with the contractors in the Portland office, where most of the contractors come each year or trade season to examine the models of the several garments and specifications and patterns therefor made by plaintiff. It is then a unit cost price is agreed upon. We do not understand that all contractors fashion all types of garments which plaintiff intends to market during the ensuing season nor that all make garments of a given type or style. This negotiated price includes the contractor's cost of manufacture, which includes the following costs of the contractor: labor, use of plant and overhead, plus a profit. The contractor neither rents his plant to plaintiff nor does plaintiff pay the contractor's workmen, nor does plaintiff exercise any control over the contractor's employes. It follows that wages paid by the contractors and their estimated property costs are not activities which can properly be considered in determining where plaintiff's income is earned.

Without defining the legal relations subsisting between plaintiff and its several contractors, plaintiff attempts to give it a distinctive cast by referring to its contractor payments as "fees" and emphasizes the

absence of formal "written" contracts and its willingness to later adjust the first negotiated price with some contractors on a basis which will insure to the contractor a fair profit. None of these features, in our opinion, overcomes the conclusion, warranted by the record, that the true legal relationship of the contractors with White Stag Company is that of independent contractors.

Plaintiff is, of course, not precluded from otherwise obtaining a very positive fiscal advantage from the payments it makes to its several independent contractors. The total of the amounts it pays to each (and which necessarily includes the contractor's costs paid to labor, plant use, etc., plus its profit) would in the methods of usual accounting practices be deducted from its gross income in determining its net income, the item sought to be allocated, and mathematically diminish the amount of its net income pro tanto.

The provisions of Regulation 4.280(1)-(B) strongly militate against the position urged by plaintiff, particularly when consideration is given to the definitions employed for the wage and property factors. That part of the regulation relating to the wage factor reads:

"The wage factor is the percentage that the total wages, salaries and other compensation for personal services paid during the taxable year to *employes* in connection with the business carried on within this state bears to such payments to *employes* during the taxable year in connection with the business carried on both within and without this state.

"Wages, salaries and other compensation must be included in the Oregon factor to the extent that services for which the compensation is paid were

rendered in connection with the business carried on within the state. Payments made to bona fide independent contractors employed by a taxpayer are not included in the wage factor." (Emphasis supplied.)

The "property factor" is therein defined:

"The property factor shall be the percentage that the average value during the taxable year of the real and tangible personal *property used in the business* within this state bears to the average value during the taxable year of such *property used in the business both within* and without this state.

"* * * * *

"In determining the property factor, real property and tangible personal property rented or leased by the taxpayer, as well as real property and tangible personal *property owned by it,* used in the production of income, *must be included in the property factor."* (Emphasis supplied.)

As those factors are defined, they foreclose any right in plaintiff to add to the amounts paid to its own employes that which the contractors paid to theirs or likewise add to its "everywhere property" factor amounts estimated or otherwise as representing the value of the contractors' property used in fulfilling the contractors' orders for merchandise manufactured for plaintiff. Even if we were to concede that plaintiff had "the use" of the properties of its respective contractors, it would not be enough to justify tacking such "use value" to its "everywhere property" factor, unless it be shown that plaintiff had a proprietary interest therein or control thereof. *Hines Lumber Co. v. State Tax Comm.,* 215 Or 453, 475, 336 P2d 75 (1959). But the record discloses no such claim of proprietary interest or control.

The evidence is clear to us that each independent contractor-manufacturer owned or leased and controlled its respective plants and equipment without any semblance of a leasing or subleasing to plaintiff; and that each contractor managed its own plant, hired, fired and paid its own employes and retained in full all profits resulting from its negotiated agreements made with the White Stag Company. Plaintiff makes no claim to the contrary.

■ To rebut the presumption that the Commission's formula is unfair or inequitable, the burden is upon the complaining taxpayer to make such a result manifest by clear and cogent evidence. *Dutton Lbr. Corp. v. Tax Com.*, 228 Or 525, 531, 365 P2d 867 (1961), and cases there cited. This the plaintiff has failed to do. At most its evidence consists of demonstrating the manner in which it computed and arrived at the several substantial estimated figures it employed in its returns for the years 1956 and 1957.

We also take note that plaintiff has cited us to no cases with a factual situation remotely comparable to the one projected by this appeal. Nor is our attention called to any treatises by tax authorities which lend any support to its thesis. Nor has our own diligence brought to light judicial precedent or arguments of tax experts which recognize or uphold the contentions of plaintiff.

■ Plaintiff asserts that Regulation 4.280(1)-(B), supra, when applied by the Commission as it has done, is unconstitutional, both under the Fourteenth Amendment of the Federal Constitution and Art I, § 32, of the Oregon Constitution, in that they impose substantially higher corporate excise taxes on plaintiff than are imposed by the laws of Oregon on other corporations earning the same net income in Oregon

as plaintiff earned and its formula has allocated to Oregon income not earned by plaintiff in Oregon and thereby subjected plaintiff to taxation that is not uniform on the same class of subjects. We find no merit in this representation. The constitutional questions raised have several times before had the attention of this court and federal courts and where they have been resolved against plaintiff's contention. *Dutton Lbr. Corp. v. Tax Com.,* supra (228 Or at 539); *Hines Lumber Co. v. State Tax Comm.,* supra (215 Or at 480); *Butler Bros. v. McColgan,* 315 US 501, 86 L ed 991, 62 S Ct 701; *Underwood Typewriter Co. v. Chamberlain,* 254 US 113, 65 L ed 165, 41 S Ct 45.

■ We do not find the formula applied by the Commission to plaintiff's returns arbitrary, unreasonable or in any sense unfair.

■ Plaintiff presents an alternative two-factor formula which it declares is more fair and equitable than the one used by the Commission. It is the same formula used by the state with the wage factor omitted. Having concluded that the Commission's three-factor formula was fair and equitable in the premises, we find no purpose in evaluating an alternative formula. Nor is it in our province to create new or what we conceive to be better formulas. That duty devolves solely upon the Commission. ORS 314.280.

The decree of the circuit court is affirmed.