## OREGON MUTUAL SAVINGS BANK v.
## STATE TAX COMMISSION

Roy E. Adkins, Portland, argued the cause for the plaintiff. Roy E. Adkins, Portland, and Davis, Jensee, Martin & Robertson, Portland, submitted briefs for plaintiff.

Gerald F. Bartz, Assistant Attorney General,

Salem, argued the cause and submitted a brief for defendant.

Decision in part for plaintiff and in part for defendant rendered March 11, 1965.

EDWARD H. HOWELL, Judge.

This is a suit for refund of income taxes for the tax years 1958, 1959 and 1960 and for abatement of income taxes for the year 1961. It is before this court on a stipulation of facts.

The plaintiff is an Oregon banking corporation, with its principal place of business in Portland, Oregon. It is engaged in making loans to individuals, corporations and associations in Oregon, Washington and California, which loans are secured by mortgages on real property.

The plaintiff's employees make regular trips into southwest Washington for the purpose of soliciting business from prospective customers, appraising real property for the purpose of making loans, and otherwise carrying on plaintiff's business. Loans in the State of Washington are made directly by plaintiff through its home office or purchased from lending agencies in the State of Washington. Collections on loans in the State of Washington are made by plaintiff at its home office and also through designated servicing agents who make collections and remit the proceeds to plaintiff. Loans secured by real property in the State of California are purchased from lending agencies in that state who act as plaintiff's agent in servicing the loans by making collections thereon and remitting the proceeds to plaintiff. Plaintiff is licensed to do business in the State of Washington although

not in the State of California. When a loan becomes delinquent, the plaintiff forecloses the mortgage on the real property securing the loan and takes title to the same in its name.

Plaintiff contends that it is doing business in Washington and California and should be allowed to allocate income as provided by ORS 314.280.[1] The defendant State Tax Commission held that the plaintiff was not doing business outside the state.

The term "doing business" has been defined by ORS 317.010(8) as "any transaction in the course of its activities conducted within the state by a national banking association, or any other corporation. * * *"

■ The Supreme Court of Oregon in *Welch Holding Co. v. Galloway,* 161 Or 515, 89 P2d 559 (1939), defined "doing business" as engaging in activities in the pursuit of gain. This definition was followed in the later case of *John I. Haas, Inc. v. Tax Com.,* 227 Or 170, 361 P2d 820 (1961). This Tax Court followed the definition in the *Welch* case in *Cal-Roof Wholesale, Inc. v. Commission,* 2 OTR 91, *affirmed* 242 Or 435, P2d 233 (1964).

■ The defendant has cited many cases from other jurisdictions about what activities constitute doing business in a state. It appears that this issue has been resolved in Oregon by the *Welch* and *Haas* cases

---

[1] "ORS 314.280 Allocation of income and losses of corporation or nonresident individual from business within and without state. (1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have the power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state."

above. Tested by the standard of engaging in activities in the pursuit of gain it would appear that plaintiff is doing business in Washington and California. Plaintiff's business is lending money. Soliciting loans, appraising property, loaning money, and, on occasion, foreclosing the mortgages is engaging in activities in the pursuit of gain for plaintiff bank.

The defendant argues that ORS 716.640(2)[2] prevents plaintiff from conducting business outside of Oregon. This court agrees with plaintiff that this statute prevents plaintiff from opening a branch office in Washington or California to accept deposits and pay interest but that it does not prevent plaintiff from conducting its mortgage loan business outside of Oregon. ORS 716.470[3] specifically authorizes plaintiff to conduct its loan business in Oregon, Washington, Idaho and California.

The plaintiff is permitted to do, and is, doing business in the States of Washington and California and is entitled to allocate its income accordingly.

The next issue is whether a guaranty fund is a bad debt reserve.

The plaintiff contends that the amount it credited to a guaranty fund is deductible from plaintiff's gross income because its guaranty fund is the same as a reserve for bad debts.

---

[2] "ORS 716.640 Place of business.

"* * * * *

"(2) No saving bank or any officer or director shall receive deposits nor transact any of its usual business at any place other than its principal place of business or a branch thereof."

[3] "ORS 716.470 Investments in notes or bonds secured by real estate mortgages. (1) A mutual savings bank may invest the funds mentioned in ORS 716.410:

"(a) In notes or bonds secured by mortgage or deed of trust upon improved unencumbered real estate in Oregon, Washington, Idaho or California. * * *"

ORS 716.780④ requires the plaintiff to credit a portion of its net earnings to the guaranty fund. ORS 716.770⑤ specifically provides that *this guaranty fund is for the security of the depositors.* (Emphasis supplied.) This is also the general rule. 9 CJS, Banks & Banking, § 17, p 44.

■■■ Bad debts are between the bank and the borrowers and the guaranty fund is clearly between the bank and the depositors. In addition, the bad debt reserve generally must bear a direct relationship to loss experience of the plaintiff. There is no showing here of any relationship between additions to the guaranty fund and the plaintiff's loss experience. Plaintiff's guaranty fund is not the same as a reserve for bad debts and not deductible.

The last issue is whether plaintiff is required to pay a tax on the amount credited to this guaranty fund regardless of the source of the funds.

ORS 317.260 generally provides that the net income

④ "ORS 716.780 Crediting portion of net earnings to guaranty fund. If at the close of any dividend period the guaranty fund of any savings bank is impaired or shall be less than 10 percent of the amount due to depositors there shall be deducted from its net earnings for such period and credited to its guaranty fund a sum not less than five percent of its net earnings during that period, if such deduction will not compel it to reduce its dividends to depositors below the rate of one percent per annum. The amount of net earnings remaining after such deduction for the guaranty fund and its undivided profits shall be available for the declaration of dividends for such period. If the guaranty fund accumulated from earnings equals or exceeds 10 percent of the amount due depositors, the minimum dividend shall be four percent, provided the net earnings for such period are sufficient therefore."

⑤ "ORS 716.770 Moneys constituting guaranty fund. The contributions of the incorporators or directors of any savings bank under ORS 716.060 and the sum credited thereto from its net earnings under ORS 716.780 shall constitute a guaranty fund for the security of its depositors. The guaranty fund shall be held to meet any contingency or loss in its business from depreciation of its securities or otherwise, and for no other purpose except as provided in ORS 716.800 and subsection (5) of ORS 716.830."

of mutual savings banks shall not be less than the amount credited or required by law to be credited to the "contingent fund." Assuming that a contingent fund is the same as a guaranty fund, ORS 716.780 requires a portion of the bank's net earnings to be credited to the guaranty fund. The statute provides:

"If at the close of any dividend period the guaranty fund of any savings bank is impaired or shall be less than 10 percent of the amount due to depositors there shall be *deducted from its net earnings for such period* and credited to its guaranty fund a sum not less than five percent of its *net earnings during that period,* if such deduction will not compel it to reduce its dividends to depositors below the rate of one percent per annum. * * *" (Emphasis supplied.)

Plaintiff contends and defendant does not dispute, that it had a loss for the tax year 1961. The plaintiff also contends that the amount credited to the guaranty fund in 1961 was acquired from earnings of prior years. The defendant apparently does not dispute this but argues that ORS 317.260, above, places a mandatory duty on defendant to tax the amount credited to the guaranty fund regardless of a loss for 1961 and regardless of the source of the amount credited to the guaranty fund. This would result in taxing the plaintiff twice—once for the year of the profit and again when it was credited to the guaranty fund.

Plaintiff's net income for tax purposes for 1961 should not be based on the amount credited to the guaranty fund. No costs to either party.