# PACIFIC TELEPHONE & TELEGRAPH COMPANY *v.* STATE TAX COMMISSION

Frederick H. Torp, Portland, submitted a brief on behalf of plaintiff.

Theodore W. deLooze, Assistant Attorney General,

Salem, Oregon, submitted a brief on behalf of defendant.

Decision for defendant rendered December 21, 1966.

EDWARD H. HOWELL, Judge.

Plaintiff appeals from an order of the tax commission which assessed additional corporate excise taxes against the plaintiff for the tax year 1961.

The facts have been stipulated. Until July 1, 1961, plaintiff, a California corporation, had been engaged in the telephone communications business in Oregon. At 11:59 p.m. on June 30, 1961, plaintiff exchanged its properties in Oregon, Washington and Idaho with Pacific Northwest Bell Telephone Company for certain securities. The latter company has continued the telephone business since the transfer.

While the plaintiff ceased to do business in Oregon at the time mentioned, it has continued its telephone business in Nevada and California.

After June 30, 1961, plaintiff had no property or employees in Oregon and no revenue from Oregon.

The plaintiff's authority to transact business in Oregon ceased on July 20, 1961, the date upon which the Corporation Commissioner of the State of Oregon issued a certificate of withdrawal pursuant to ORS 57.726.

Plaintiff has regularly used the accrual method of accounting. Its annual accounting period and taxable year was the calendar year and plaintiff has historically kept its books of account on that basis.

On October 15, 1962, plantiff filed its Oregon corporation excise tax return for the calendar year 1961 showing a total net income of $481,876,927.24. Sched-

ule (J) of the return reported $19,792,852.45 apportioned to Oregon based on the three-factor formula of property, payroll and sales. This amount was based on an average of 4.132 percent for all the three factors. Plaintiff applied the six percent rate required by ORS 317.070 to the income allocated to Oregon resulting in a tentative tax of $1,187,571.15. Applying the formula contained in ORS 317.095, the final excise tax was computed by taking 181/365ths of this amount to give a tax liability of $588,905.15. The plaintiff attached the following statement to the return:

> "The Pacific Telephone and Telegraph Company ceased to do business in the State of Oregon at 11:59 P.M. on June 30, 1961. Under the provisions of ORS 317.095, the taxpayer's taxable status is thereby deemed to have been changed; and in accordance with the requirements of ORS 317.095, the tax for 1961 is determined by applying to a tentative tax, computed on taxable income for the entire year, the fraction of 181/365, which represents that proportion of the year during which the taxpayer was subject to the provisions of the Oregon Corporation Excise Tax Law."

The defendant found that ORS 317.095 did not apply to plaintiff, that plaintiff improperly applied the formula stated in that statute and issued a deficiency assessment.

This case involves substantially the same issues as *Pacific Power and Light Company v. Commission,* 2 OTR 420 (1966), (hereinafter referred to as *Pacific Power*).

In the latter case the California Oregon Power Company (called Copco) merged with Pacific Power on June 21, 1961. On December 11, 1961, Copco filed a final Oregon corporation excise tax return for the period January 1, 1961, to June 21, 1961. Pacific

Power, as successor to Copco contended that ORS 317.095, which allowed excise taxes to be apportioned when a corporation ceased to be subject to the Oregon excise tax statutes, applied to Copco when they merged with Pacific Power on June 21, 1961.

This court held that ORS 317.095 applied to Copco because of the merger with Pacific Power. It also held against Pacific Power on the application of the formula set forth in ORS 317.095 and found that Copco's "taxable year" was the period from January 1, 1961, to June 21, 1961, and not the entire twelve-month calendar year as contended for by Pacific Power.

The first issue in the instant case is whether ORS 317.095 applies to the plaintiff herein. ORS· 317.095 was repealed by the legislature in 1965 and replaced by ORS 317.096. However, the former statute controls the tax year 1961. It stated as follows:

> "317.095. Computation of tax upon a change of taxable status or tax rate. (1) *If the taxpable status of a corporation under this chapter changes,* or if any rate of tax imposed by this chapter changes, and if the taxable year includes the effective date of the change (unless that date is the first day of the taxable year), then tentative taxes shall be computed by applying the rate for the period before the effective date of the change, and the rate for the period on and after such date, to the taxable income for the entire taxable year, and the tax for such taxable year shall be the sum of that proportion of each such tentative tax which the number of days in each such period bears to the number of days in the entire taxable year. A corporation shall be deemed to have changed its taxable status on the effective date of the Act under which it first becomes subject to the provisions of this chapter, and *a corporation which at any time ceases to be subject to this chapter shall be*

*deemed to have changed its taxable status at that time.*

"(2) This section shall apply only to taxable years ending on and after August 3, 1955." (Emphasis supplied.)

Like Copco in the *Pacific Power* case, the plaintiff contends that ORS 317.095 applies to it because it ceased to do business in Oregon on June 30, 1961, and therefore it falls within that part of the statute which states that "a corporation which at any time ceases to be subject to this chapter shall be deemed to have changed its taxable status at that time."

■ The defendant again argues that ORS 317.095 was not intended to apply to a corporation ceasing to do business in Oregon during the tax year. This court found in *Pacific Power* that the statute was not ambiguous and that it applied to Copco because of the merger with Pacific Power. There does not appear to be any reason why the same ruling should not be applied in this case. Plaintiff ceased to be subject to the Oregon excise tax laws when it ceased doing business in Oregon on June 30, 1961. Consequently, plaintiff is considered to have changed its taxable status at that time within the meaning of ORS 317.095.

The next issue is whether plaintiff's taxable year is a calendar year or a fractional part of a year—the period from January 1 to June 30, 1961.

In *Pacific Power* it was decided that Copco's "taxable year" within the meaning of ORS 317.095 was a fractional part of a year and not a calendar year as contended for by Copco. In that case Copco filed a final Oregon corporation excise tax return for the period January 1, 1961, to June 21, 1961, and completely terminated its corporate existence everywhere

on June 21, 1961. In the instant case plaintiff filed a return for the twelve-month period of January 1, 1961, to December 31, 1961, and while it terminated its corporate existence in Oregon on June 30, 1961, it still continued its existence in the states of Nevada and California.

Plaintiff's position is that its taxable year is a calendar year because, unlike Copco, it continued to remain in existence after June 30, 1961, when its business activities ceased in Oregon.

Plaintiff apparently does not quarrel with the decision in *Pacific Power* recognizing a tax return for a fractional year where the corporation ceases to exist during a calendar or fiscal year. Plaintiff states the following in its reply brief:

> "There are, indeed, some instances in which net income must be computed with respect to a period of less than twelve months. The rule enunciated by this Court in *Pacific Power* is consistent with plaintiff's contentions in this case. In fact, Plaintiff's Brief (p. 15) anticipated the *Pacific Power* rule, namely, that termination of corporate existence.is such an exception as to shorten the taxable year. Of course, where the taxpayer actively continues to exist its taxable year is entirely unaffected by a change of taxable status, mode of operation or cessation of business."

In support of the proposition that a corporate taxpayer's taxable year is a twelve-month calendar or fiscal year where it continues to remain in existence beyond the date upon which its business activities ceased, the plaintiff cites the following cases: *United States v. Kingman,* 170 F2d 408 (5th Cir 1948), 37 AFTR 529, 48-2 USTC ¶ 5927; (corporation stockholders passed resolution for immediate dissolution on April 3, 1943, but corporation continued in existence

to make certain collections. Tax returns for 1943 were made on full-year basis); *Commissioner of Int. Rev. v. Allegheny Broad. Corp.,* 170 F2d 844 (3rd Cir 1950), 38 AFTR 1352, 50-1 USTC ¶ 5950, affirming 12 TC 552 (1949); (the taxpayer ceased doing business in February, 1945, spent remainder of 1945 winding up affairs and dissolved in 1946. Taxpayer was entitled to file on full calendar year basis because it remained in existence during all of 1945). See also *Helvering v. Morgan's, Inc.,* 293 US 121, 55 S Ct 60, 79 L ed 232, 14 AFTR 681, 35-1 USTC ¶ 368 (1934); *Ray H. Schulz v. Commissioner,* 34 TC 235 (1960), *affirmed* 294 F2d 52 (9th Cir 1961), 8 AFTR2d 5406, 61-2 USTC ¶ 9648; *Union Bus Terminal, Inc. v. Commissioner,* 12 TC 197 (1949), *affirmed per curiam,* 179 F2d 399 (5th Cir 1950), 38 AFTR 1286, 50-1 USTC ¶ 9172; *Anne Schick v. Commissioner,* 45 TC 368, Dec. 27,808, (1966).

The above cases supporting the rule that a corporation's taxable year is a twelve-month period when it continues its existence after ceasing to do business during the year are not in point when applied to the facts in the instant case. Plaintiff ceased to do business in Oregon on June 30, 1961, and its authority to transact business in Oregon ceased on July 20, 1961, when the corporation commissioner issued a certificate of withdrawal to plaintiff. As far as Oregon tax law is concerned the plaintiff ceased to exist on June 30, 1961. It did not continue in existence in Oregon after June 30 to wind up its affairs. After that date it had no property or employees in Oregon and no revenue from Oregon. On that date (except for the certificate of withdrawal) it had accomplished everything pertaining to a withdrawal in Oregon. It is not important as far as Oregon is concerned that the plain-

tiff continued to conduct its telephone business in Nevada and California.

■ As the plaintiff ceased to exist for Oregon tax purposes on June 30, 1961, its taxable year was not the calendar year 1961, but was the fractional part of the year January 1, 1961, to June 30, 1961. Consequently, its tax must be based on the same application of ORS 317.095 as was used in the *Pacific Power* case.[1]

The next issue involves the property factor in the three-factor formula for apportioning plaintiff's Oregon income on the basis of property, wages and sales.[2]

ORS 314.280 provides that Oregon tax liability will

---

[1] The fact that Copco in the *Pacific Power* case filed a return for a fractional period and plaintiff filed a return for a calendar year is not considered an important distinction. ORS 317.010 (17) defining taxable year as a calendar year or fiscal year also states, " 'Taxable year' includes, in the case of a return made for a fractional part of a year, the period for which such return is made." The word "includes" should not be narrowly restricted to cases where the return is voluntarily filed for a fractional part of a year. It should depend on the time during which the taxpayer was a taxable entity. In *Royal Highlanders v. Commissioner*, 1 TC 184 (1942), 138 F2d 240 (8th Cir 1943), 31 AFTR 661, 43-2 USTC ¶ 9612, discussed in *Pacific Power*, the taxpayer continued in existence after ceasing to do business as a fraternal society and filed a return which appeared on its face to be a return for a full calendar year. The return showed, however, that income and deductions were reported only for the fractional year and the court found its taxable year to be the fractional year. See also *Reserve Loan Life Insurance Co. v. Commissioner*, 4 TC 732, 740 (1945) where the court, in discussing a statute containing the same language as ORS 317.010 (17), above, found that the word "includes" in the statute should not prevent the court from finding that a taxable year is a fractional part of a year even though the return was filed for a calendar year.

[2] The formula requires the computation of the percentage which the average value of the taxpayer's Oregon property bears to his total property. The wages and sales percentages are computed in the same manner. The three percentages are totaled and an average percentage is obtained by dividing the total by three. The average percentage times the taxpayer's total income gives the net income apportionable to Oregon.

be based upon Oregon activity where a corporation does business within and without Oregon. The plaintiff filed its 1961 return as a unitary business using the apportionment formula following the STC Reg. 314.280, and from the instructions for the apportionment schedule (J) of their 1961 return. STC Reg. 314.280(1)-(B) uses average value during the taxable year within Oregon as the numerator of the property factor. The controversy centers on the method of determining average value. The plaintiff contends that the property percentage allocation to Oregon should be 6.479 percent for the six months period if it were computed on the basis of an average of the value of plaintiff's Oregon property on January 1, 1961, and a zero value as of the close of business on June 30, 1961, because the property had been sold. The defendant would determine the Oregon property allocation on the basis of averaging the monthly average values for each of the six months from January 1, 1961, to June 30, 1961. This would result in a percentage allocation to Oregon of 7.588 percent.

■ To rebut the presumption that the formula used by the state produced a fair result, the burden is on the taxpayer to make its oppression manifest by clear and cogent evidence. *Dutton Lbr. Corp. v. Tax Com.,* 228 Or 525, 365 P2d 867 (1961).

The plaintiff supports its position in favor of a beginning value averaged with a zero ending value on the grounds that it followed the instructions on schedule (J) of the corporate excise tax return which states in part: "If book values are used in computing the property factor, such values should, in general, be the average value at the beginning and end of the tax year or period." However, the next sentence states: "If

necessary more accurately to reflect use value, the average of monthly values may be required."

The plaintiff also contends for the zero property value for the close of the year on the basis that all the property had been sold when it went out of business in Oregon at 11:59 p.m. on June 30, 1961. However, during all the period from January 1, 1961, until the last minute of its existence on June 30, 1961, the plaintiff owned substantial Oregon property which was receiving, as Mr. Justice WARNER stated in the *Dutton* case, "the general advantages and protection which the government affords the taxpayer and his property."

The plaintiff has failed to sustain the burden of proving that the commission's system produces an inequitable result and the defendant's method of averaging the monthly average values for plaintiff's Oregon property is approved.

The last issue concerns the validity of the defendant's disallowance of one-half of $98,024,582.88 of accrued real and personal property taxes which accrued on the following dates and in the following amounts:

| State | Amount | Assessment and Lien Date |
|-------|--------|--------------------------|
| Washington | $ 5,057,282.80 | January 1, 1961 |
| Idaho | 185,410.88 | January 9, 1961 |
| California | 92,781,830.23 | March 6, 1961 |
| Oregon | 58.97 | January 1, 1961 |
| Total | $98,024,582.88 | |

The parties have stipulated that the plaintiff has always accrued real and personal property taxes as of the dates that such taxes became liens and that such practice is in accord with sound accounting principles and with provisions of the Internal Revenue Code. After July 1, 1961, when the plaintiff's Oregon

properties were owned by Pacific Northwest Bell Telephone Company, the latter, in its corporate excise tax return for July 1, 1961, to December 31, 1961, deducted such real and personal property taxes which became a lien on and after July 1, 1961.

The defendant disallowed one-half of the property taxes because the plaintiff's tax year was not a full calendar year but only the first six months of 1961.

The defendant's Reg. 317.265(1) states in part:

> "Taxpayers reporting upon the accrual basis may deduct taxes only in the taxable year in which falls the date of accrual of the taxes. \* \* \*
>
> "Oregon real property taxes accrue as of 1 a.m. on July 1 in the year of assessment. Oregon personal property taxes accrue as of January 1 in the year of assessment. \* \* \*"

■ The parties have stipulated the amounts of the taxes and dates they became liens as hereinabove set forth. There does not appear to be any valid reason for disallowing one-half of plantiff's real and personal property taxes. Plaintiff is entitled to deduct the full amount of $98,024,582.88 for real and personal property taxes which accrued and became liens before July 1, 1961.

The decree will be entered under Rule 37 of this court requiring the parties to recompute the deficiency pursuant to the within determination of the issues.

Costs to neither party.