# KLAMATH PRODUCTION CREDIT ASSOC. *v.* STATE TAX COMMISSION

Thomas S. Moore and Ralph Bailey, Portland, Oregon, represented plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered May 5, 1967.

EDWARD H. HOWELL, Judge.

This is an appeal by plaintiff from the tax commission's order denying a claim for refund of excise taxes for the years 1959, 1960 and 1961.

It has been stipulated that plaintiff is a unitary corporation doing business in the State of California and entitled to apportion its income under ORS 314.280 and Reg 314.280(1)-(B). The latter allows financial institutions to apportion their income using a three-factor formula of gross payroll, loans and interest. The issue involves the allocation of these factors between Oregon and California.

The Klamath Production Credit Association is a financial institution engaged in making agricultural loans in Klamath and Lake Counties in Oregon and Siskiyou and parts of Modoc Counties in northern California.

The main office of the company in Klamath Falls employs about six persons including a fieldman who, during the times involved, spent part of his time in the Yreka, California area.

Most of the loan applications from ranchers in the Doris and Tulelake areas are made and closed at the Klamath Falls office. All accounting records are maintained at Klamath Falls.

In the Yreka area, because of its distance from Klamath Falls, most of the loans are solicited by the fieldman working in California. The prospective borrowers execute a loan application, a financial statement, a budget, and supply certain credit information. The fieldman makes an inspection of the applicant's ranch, checks the livestock, machinery, etc., and fills out a report. These are sent to the Klamath Falls office. If the loan is approved by the loan committee, which meets once each week in Klamath Falls, a note and security agreement are prepared. These documents are signed and recorded in California and returned to the Klamath Falls office. The note and mort-

gage are assigned to the Federal Intermediate Credit Bank in Spokane which provides the funds for the Klamath Falls office to loan to the borrowers.

During the tax years involved the fieldman from Klamath Falls spent two days every two weeks in the Yreka area. An office was maintained in Yreka with a sign on the outside of the building. The office consisted of a separate room, a telephone and the use of a lobby. In addition to soliciting loans and assisting with the preparation of the applications the fieldman made some collections which he mailed or carried to the Klamath Falls office. No records were maintained in the Yreka office. During the absence of the fieldman one of the employees of the Federal Land Bank in the same office would answer the phone and forward to Klamath Falls any mortgage payments received in the Yreka office. For these services he was paid $100 per year by the Klamath Production Credit Association.

After the loan was made it was the practice of the fieldman to call on the rancher-borrower once each summer to check on crops, give advice and make collections. On occasions the loan committee from Klamath Falls would visit the rancher.

As the defendant has conceded that plaintiff is doing business in California and is therefore entitled to apportion its income for excise tax purposes, the main issue concerns which factors should be allocated to Oregon and which to California under ORS 314.280 which states that the allocation formula is "designed to allocate to the State of Oregon on *a fair and equitable basis* a proportion of such income earned from sources both within and without the state." (Emphasis supplied.)

Apparently from the research of counsel and by this court there is no case law on how the interest and loan factors of a unitary financial corporation should be allocated between the states where the corporation is doing business.

The plaintiff contends that loans made on property in California and interest collected on such loans should be allocated to California. The defendant argues that all loans made from the Klamath Falls office, regardless of where the property is located, and the interest on such loans, should be allocated to Oregon under the apportionment formula. At the trial, however, the defendant commission stipulated that interest collected in California on California loans should be allocated to California.

The defendant relies on the decision of this court in *Ore. Mut. Sav. Bank v. Commission*, 2 OTR 124 (1965). In that case the primary issue before the court was whether Oregon Mutual Savings Bank was doing business in the states of California and Washington. If it was, it was entitled to apportion its income under ORS 314.280. The court defined "doing business" as "engaging in activities in the pursuit of gain" and found that plaintiff's activities constituted doing business in those states. After the filing of the decision and prior to the entry of the decree the tax commission raised the question of the proper allocation of the loan and interest factors in order to compute the amount of tax to be entered in the decree. The commission contended that even though the plaintiff was doing business without the state the loan and interest factors nevertheless should be allocated to Oregon because the loans were made and processed through plaintiff's offices in Oregon. The court agreed with the commission and the decree was entered with the

loan and interest factors, together with the payroll factor, being allocated to Oregon. This is now considered to have been an erroneous apportionment of the loan and interest factors. The decision in *Oregon Mutual Savings Bank, supra,* should be regarded only as authority for the issue presented in the reported case—whether the plaintiff was doing business outside the state—and should not be considered as precedent on how the interest and loan factors for a unitary financial corporation should be allocated.

The commission also relies on a decision of the California State Board of Equalization, *Appeal of Tri-State Livestock Credit Corporation,* 3 CCH Calif Tax Rep ¶ 201-533, April 4, 1960. In that case the taxpayer was a California corporation with its only office located in San Francisco. It made loans to livestock producers in California, Arizona, Nevada and Oregon. The loans were generally secured by chattel mortgages with an occasional real property mortgage or trust deed. In the various states the taxpayer had employees who solicited loans, appraised the property and sent the applications to the San Francisco office where the loan documents were prepared and sent to the borrowers for signing. All loan and interest payments were received in San Francisco. The tax board, however, had assigned the interest factor to the states where the debtor resided. For the gross loan factor the appellate board found that the location of the debtor was not important and approved a formula which gave effect to the location of the borrower for the interest factor and the location of the taxpayer's office in San Francisco for the gross loan factor.

It is conceded that plaintiff is entitled to apportion its income between Oregon and California. ORS

314.280(2) states the basic theme: the allocation formula is designed to allocate on a fair and equitable basis a portion of plaintiff's total earnings to Oregon. The Reg 4.280(1)-(A) (now 314.280(1)-(A)) follows the statute and states that "the tax is measured by the portion of net income properly attributable to the state" where a corporation conducts business both within and without the state.

If the purpose of the allocation formula is based upon Oregon being entitled to a fair and equitable proportion of plaintiff's total earnings then it would appear to be self-evident that plaintiff's allocation to California should also be fair and equitable under the circumstances.

■ It is not possible to precisely identify that portion of the loans or interest or both that should be assigned to California. However, an allocation formula is not intended to be a precise distribution of income of a unitary corporation. "The standard three factor formula can be justified as a rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates." *General Motors Corp. v. District of Columbia,* 380 US 553, 85 S Ct 1156, 14 L ed2d 68, 73 (1965). Speaking of the allocation formula, Justice WARNER in *Dutton Lbr. Corp. v. Tax Com.,* 228 Or 525, 365 P2d 867 (1961), said:

"It is a judicially recognized fact that as a matter of practical tax administration, no method of allocation can precisely determine the exact amount of income attributable either to any given geographic area or to any given part of a series of business transactions culminating in the realization of a profit, and any honest effort in that regard must be more or less arbitrary and fictitious. [Citing cases.]" 228 Or at 534.

■ As the plaintiff is doing business in California that state would be free to exact a reasonable tribute from those using its economic resources. *Amer. Refrig. Transit Co. v. Tax Com.,* 238 Or 340, 346, 395 P2d 127 (1964). The taxing power exerted by a state should bear some relation to the protection, opportunity and benefits given by the state. *Dutton Lbr. Corp. v. Tax Com., supra,* 228 Or at 536.

In *Amer. Refrig. Transit Co. v. Tax Com., supra,* Justice O'CONNELL, speaking of nexus or the minimum connection necessary between the state and the person or property to be taxed stated:

> "The nexus exists whenever the corporation takes advantage of the economic milieu within the state to realize a profit. The state is entitled to tax if the benefits it provides are a substantial economic factor in the production of the taxpayer's income. These benefits are found in the maintenance of conditions essential to the production or marketing of goods. They may be realized simply in the protection of the taxpayer's property used in the production of income.

> "* * * To establish nexus it is necessary to show that the taxpayer has, in the conduct of his business, taken advantage of the economy of the taxing state to produce the income which is subjected to tax. * * *" 238 Or at 346.

The tax commission formula of assigning all three factors in the formula to Oregon would, as plaintiff contends, result in no apportionment of plaintiff's income although it is conceded that plaintiff is doing business in California and entitled to apportion its income. This does not constitute an allocation on a "fair and equitable basis."

■ As Justice WARNER found in *Dutton, supra,* any

method of allocation must, to a certain extent, be arbitrary and fictitious. Beyond question the payroll factor, except for the wages earned in California, must be assigned to Oregon. The tax commission has agreed that interest collected in California should be assigned to that state. In addition, all interest received on California loans should also be allocated to California which was the state that provided the "economic milieu" for earning such interest. This also agrees with the finding of the California State Board of Equalization in *Tri-State, supra,* when the interest factor was assigned to the states where the debtors resided.

The proper allocation of the gross loan factor presents a more difficult question. In *Tri-State, supra,* the California State Board of Equalization found the location of the debtor or the property to be relatively unimportant as compared to the location of the office making the loans. The tax commission contends that the decision to make the loan, the maintenance of plaintiff's records and the basic management decisions were all executed in plaintiff's office in Klamath Falls and that the location of plaintiff's office should control the allocation on this factor.

On the other hand, at least in the Yreka area, most of the loans were solicited in California and the applications and loan documents were executed there. Of course, all California loans were appraised, serviced and supervised in California. More important is the fact that the property, which is the subject of the loan, is located in California. The property securing the loan is "a substantial economic factor in the production of the taxpayer's income." *Amer. Refrig. Transit Co. v. Tax Com., supra.* The debtor's property

is part of the economy of California. The debtor and his property is under the jurisdiction of and entitled to the protection of the laws and courts of California.

The loans on California property should be allocated to California under the apportionment formula. Moreover, this method of allocating California loans and interest on California loans to California was apparently followed by the tax commission for at least several years prior to this suit. It must be assumed that the tax commission was following the statute and its own regulations requiring it to allocate plaintiff's income on a fair and equitable basis during that period.

The plaintiff is entitled to the refund of the corporation excise taxes paid for the years involved.