## CHARLES D. and MILDRED P. BRONSON *v.* DEPARTMENT OF REVENUE

Warde H. Erwin, Erwin & Gilbert, Portland, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant dated June 19, 1972.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from the Department of Revenue's Opinion and Order No. I-71-41 which sustained

the assessment of additional personal income taxes for the tax years 1966, 1967, 1968 and 1969.

In May 1970, the Internal Revenue Service made an audit report on plaintiffs' federal income tax returns which concluded that the taxpayers had failed to report the gain from sale of an Arizona partnership interest and that certain minor adjustments on farm depreciation and partnership income must be made for the 1966 tax year, adding to taxable income. There were additional adjustments to the 1967, 1968 and 1969 returns. The Department of Revenue received a copy of the federal adjustments in October 1970 in accordance with an agreement between the Oregon State Tax Commission and the Internal Revenue Service, dated July 8, 1964, for a mutual exchange of information regarding income tax return adjustments of individuals subject to federal and Oregon income tax.

Based on the federal billings, modified to follow Oregon statutes, the Department of Revenue prepared and, on March 22, 1971, mailed to the plaintiffs notices of proposed deficiencies on income taxes allegedly due the State of Oregon for tax years 1966, 1967, 1968 and 1969. The Department of Revenue's auditor made no independent examination of any of the taxpayers' books or records but relied on the federal adjustment and a review of the taxpayers' returns for the years in question as the sole basis for the deficiency notices.

Plaintiffs' claim that the proposed tax assessments for tax years 1966 and 1967 are outlawed by the three-year statutory period of limitations against additional assessments. However, ORS 314.410(3) extends the statute of limitations where there has been a federal correction of the taxpayers' returns and the taxpayers have failed to file any report thereof or to

amend their state return as required by ORS 314.380 (2). Thus, the notices of deficiency and proposed assessments were within the period authorized by this statute.

Taxpayers then allege that the department's proposed assessments are invalid because they were based upon an audit performed by the federal government, without an independent audit of the plaintiffs' books and records by the Oregon Department of Revenue.

The pertinent statute, ORS 314.405(1), states:

"As soon as practicable after the return is filed, the department shall audit it, if the department deems such audit practicable. If the department discovers from the audit of a return *or otherwise* that a deficiency exists, it shall compute the tax and give notice to the taxpayer of its proposal to assess the deficiency, plus interest and penalty for fraud or negligence, if any attaches. The notice shall state the reason for each proposed adjustment to the return and a reference to the statute, regulation or department ruling upon which the proposed adjustment is based. Each notice of deficiency and proposed assessment shall be certified by the auditor who audited the return that he has audited the return and that the proposed adjustments to the return are made in good faith and not for the purpose of extending the period of assessment." (Emphasis supplied.)

Clearly, ORS 314.405(1) does not require the department to make an audit on every return or on any tax return for that matter. Moreover, there is no limitation upon the manner in which the department may receive information, "if the department discovers from the audit or otherwise" that some income has not been reported. ORS 314.840 specifically provides for an exchange of income tax information between the federal and state governments.

Taxpayers contend that they would be deprived of property without due process of law if they are required to pay the deficiencies because the Department of Revenue's auditor allegedly made no good-faith investigation of plaintiffs' tax returns and records. "Due process," guaranteed under both the state and federal constitutions, has many meanings, but in the present context it chiefly refers to notice to the taxpayer, the right to be heard and to examine witnesses. The record is clear that the plaintiffs, after the first notice, fully exploited their rights in all respects, pursuant to ORS 314.405(2) and 314.455. See also *Johnston et ux v. State Tax Com.*, 218 Or 110, 342 P2d 799 (1959). If any defect exists, it is cured by the appeal to this court. *Portland Canning Co. v. Commission*, 241 Or 109, 404 P2d 236 (1965) *aff'g* 1 OTR 600 (1964).

A fourth contention of the taxpayers is that it was unconstitutional for the State of Oregon in 1969 to tax Oregon residents on income earned within and without the state on the basis of the laws, regulations, definitions and provisions of a federal law. The taxpayers point out that the statute, the Personal Income Tax Act of 1969, became effective as of January 1, 1969, and the Oregon constitutional provision, Art IV, § 32, providing for a definition of the federal income tax law and a review of federal income tax laws, did not become effective until adopted by the people on November 3, 1970. This argument is without merit. As stated in 1 Sutherland, *Statutory Construction* 68, § 310 (3d ed 1943):

"The adoption of the statutes of another state or of Congress is frequently attacked as being a

delegation of legislative power. Such adoption, how-
ever, is almost universally sustained when the
foreign law as then *existing* is adopted as the law
of the adopting state. * * *"

The law applied by Oregon to the taxpayers in the year
1969 was the federal law as it existed on December 31,
1968. ORS 316.012. The amendment to the Oregon Con-
stitution was enacted to keep the Oregon statute in
conformity with federal amendments made at a sub-
sequent time. It has no application to the tax year 1969.

The Internal Revenue Service's demand for addi-
tional taxes included a large item of unreported gain
from sale of an Arizona partnership interest in 1966.
The Oregon auditor, relying upon the federal report,
added the gain to the taxpayers' Oregon income for
1966 because of this transaction. At the trial, there
was testimony that the federal agents had originally
accepted plaintiffs' cost-recovery theory, agreeing with
taxpayers that, until their basis in the partnership
interest had been recovered, there was no reasonably
definite way in which a determination could be made
as to the taxable gain which would be received over the
course of several years. Testimony was offered that
the acceptance of this theory by the federal agent was
subsequently revoked and recognition of gain was
required in 1966. The taxpayers testified that they
acceded to this, not because they believed it correct
but because of their wish to effect an overall settle-
ment. It was their view that for Oregon purposes the
cost-recovery theory should be adopted, and some
testimony was presented to indicate the uncertainty of
receipt of the hoped-for gain. However, the amounts
involved were specific and definite, the promises to pay
were secured by a first mortgage on property involved

in the sale and the court finds that the evidence does not bring the transaction within those rare instances where the cost-recovery reporting is acceptable to tax administrators and defensible under the statutes. See Mylan, *Cost Recovery as a Method of Reporting Gain from Dispositions of Property,* 8 Willamette L J 1 (1972).

The taxpayers' returns for the tax years 1966 to 1969 having been opened to review by the auditor's billing, the taxpayers sought to amend their returns by taking a reasonable amount for depreciation, insurance, heat, light and water on a portion of their personal residence which they alleged was used during the years in question for business purposes only. Such deductions are allowable. However, while some time was given to testimony on this point, the record is insufficient to determine what amounts were deductible in any of the years mentioned. The principal witness was unable to furnish the records or to remember the details necessary to separate personal from business expense in order to establish the deductions.

The taxpayers' seventh contention relates only to the 1969 taxable year in which the Oregon law, for the first time, was subject to the Personal Income Tax Act of 1969, adopting federal income tax law to a very substantial degree. See ORS 316.007 and 316.012. On the petitioners' 1969 Oregon income tax return, the report of a Guarantee Mutual Insurance annuity was made pursuant to the federal law, as required by the Personal Income Tax Act of 1969. This showed that the amount received in 1969 was $1,200. Under the federal formula, there was an exclusion of 61 percent of the 1969 receipts, leaving income to be reported for both

federal and Oregon purposes, in the view of the petitioners, at $468. The Department of Revenue concluded that the whole amount of $1,200 should be reported in the Oregon income tax return, based upon the department's Reg. 316.047-(A) promulgated December 31, 1969:

> "*Annuities*. In those situations where annuities have been taxed by different rules under the law in effect prior to January 1, 1969, and the federal Internal Revenue Code, an adjustment will be necessary for years beginning on and after January 1, 1969. In most instances, Oregon will have allowed a much greater deduction for recovery of basis than will have been allowed under the federal law. In those cases, the amount of deduction for recovery of basis under the federal law which becomes the starting point of computing Oregon income for years beginning on and after January 1, 1969, must be eliminated until the amount deducted for recovery of basis is the same under both laws for the entire length of the annuity. As soon as the federal recovery of basis equals that recovered under Oregon law prior to January 1, 1969, the federal return will be followed without adjustment for the remainder of the pay out of the annuity."

Effective for taxable years beginning on and after January 1, 1969, the Oregon legislature adopted the Personal Income Tax Act of 1969 which was intended:

> "* * * in so far as possible, to make the Oregon personal income tax law identical in effect to the provisions of the federal Internal Revenue Code of 1954 relating to the measurement of taxable income of individuals, * * *." (ORS 316.007)

Prior to the adoption of the 1969 Act, Oregon's treatment of annuities, pursuant to the Personal Income

Tax Act of 1953 and its predecessor act, the Property Tax Relief Act of 1929, followed ORS 316.110(2):

"(2) * * * Amounts received as an annuity under an annuity contract shall be included in gross income; except that there shall be excluded from gross income the amount received in the tax year until the aggregate of the amounts excluded from gross income under this chapter and under the Property Tax Relief Act of 1929, as amended, on any such contract equals the aggregate premiums or consideration paid for such annuity. * * *"

Oregon's procedure was based upon the federal Internal Revenue Code as it existed prior to the enactment of the 1939 Internal Revenue Code, when the "three percent rule" was adopted by the Congress, under which each receipt of annuity payment imposed upon the taxpayer the duty to report as income the portion of each such payment which was equal to three percent of the total premiums or other consideration paid for the annuity contract. The balance was excluded from gross income until the total capital contribution had been recovered. The "three percent rule" was superseded in the 1954 Internal Revenue Code to provide for a "uniform exclusion percentage," applicable to each annuity payment to determine the tax-free portion. The balance was then treated as ordinary income. The uniform exclusion percentage is determined by the ratio of the amount paid for the contract (e.g., $8,000) to the amount expected to be returned to the annuitant, using his life expectancy in years multiplied by the annual payments; (e.g., an expected return of $10,000 from an $8,000 annuity results in an 80 percent ratio, and 80 percent of each annuity payment received by the taxpayer would be excluded from income in the federal return). The

courts agree that this amendment "practically" gives the taxpayers even treatment, but this is true only if they die pursuant to the mortality table. Those who die too soon will overpay and those who exceed their expected mortality will underpay, since the formula is followed until the taxpayer's death.

As has been stated, the intent of the Personal Income Tax Act of 1969 was to follow the federal definition of "gross income," "taxable year" and other technical terms so far as possible. ORS 316.012. "In so far as is practicable in the administration of this chapter, the department shall apply and follow the administrative and judicial interpretations of the federal income tax law." ORS 316.032(2).

In determining that the petitioner should have reported the total annuity payment received in 1969 ($1,200) as Oregon income, the department depended upon ORS 316.047, a section dubbed by the codifiers as a "Transitional provision to prevent doubling income or deductions." It reads:

> "If any provision of the Internal Revenue Code or of this chapter requires that any amount be added to or deducted from federal gross income or the net income taxable under this chapter that previously had been added to or deducted from net income taxable under the Oregon law in effect prior to the taxpayer's taxable year as to which this chapter is first effective, then, in such event, appropriate adjustment shall be made to the net income for the year or years subject to this chapter so as to prohibit the double taxation or the double deduction of any such amount that previously had entered into the computation of taxable income. Differences such as the difference in basis of property used by the taxpayer for federal and Oregon income tax

returns and on account of the treatment of operating losses shall be resolved by application of this principle. * * *"

The rationale for utilizing this section is explained by the department's memorandum, filed in the court on May 2, 1972, in the case of *Gray v. Department of Revenue,* Oregon Tax Court No. SC-704, on page 2, lines 12-24, with respect to the identical issue:

"When the facts in this case are viewed in the light of the provisions of ORS 316.047, we find that section 72(b) of the Internal Revenue Code requires that annuity receipts in the amount of $1,863.73 be deducted or excluded from federal gross income for 1969. However, by reason of the pre-existing law (ORS 316.110) on January 1, 1969, there existed a $3,576.54 surplus of annuity income excluded for state tax purposes over that excluded for federal tax purposes. Therefore, the amount required to be deducted from federal gross income had previously been deducted under Oregon law in effect prior to the 1969 tax year, requiring an appropriate adjustment to be made to net income so as to prevent a double deduction of an amount ($1,863.73) which had previously entered into the computation of taxable income."

An "exclusion" (or exemption) from Oregon pre-1969 gross income (ORS 316.110(2)) is thus termed a "deduction" by the Department of Revenue, although these words of art are significant technical tools, requiring utmost nicety in their use. (In the Personal Income Tax Act of 1953, compare the concepts comprehended in ORS 316.105, "gross income"; ORS 316.110, "exclusions from gross income"; and ORS 316.305 et seq., "deductions." A slipshod application of these terms will increasingly lead to difficulty in tax administration.) Petitioners' annuity receipts,

prior to 1969, had never been *deducted* from "the net income taxable under the Oregon law in effect prior to the taxpayer's taxable year" of 1969. Until the taxpayer recovered his total investment, every aspect of the annuity was excluded by statute from Oregon income tax considerations (except to reduce his income and consequently to reduce his federal income tax deduction, pursuant to ORS 316.315).

As far as the year 1969 is concerned, the inclusion of $468 in the federal return, representing moneys received in 1969, was an *addition* in that year to the total of annuity payments received by the petitioners in former years, and it was an amount that, under federal law for 1969, had to be added to the 1969 federal gross income and thus to Oregon income. But it was not an "amount" that had previously been *added* to former Oregon net taxable income (and so twice subject to taxation) or that had previously been *deducted* from Oregon net taxable income (and so doubly deducted) and those two elements of the statutory income tax formula are the only ones requiring adjustment pursuant to ORS 316.047.

Under the pre-1969 Oregon income tax law, a taxpayer was expected to know what he had invested in an annuity, and what his accumulated annuity receipts totaled in each year, in anticipation of the taxable year when his receipts would exceed his cost. By using language which turns this statutory exclusion of annual receipts into a deduction, the department brings the transaction within ORS 316.047 and gives a semblance of justification in applying the rule in its regulation entitled "Annuities." It appears to the court that, by thus straining language, the department overturns the

pre-1969 legislative policy of nontaxation of annuities which was modeled on the earlier federal statute and persisted in by the legislature in spite of two subsequent major changes of the federal statute. The court recognizes the department's duty to preserve the tax base intended by the legislature and to resolve doubts in favor of such retention but believes that the technical words of the statute favor the petitioners' construction in this instance. The new law, as stated above, was intended to utilize a taxpayer's federal return with the fewest possible modifications.

The court concludes that the 1969 legislative provisions are not sufficiently clear in the expression of a legislative change of policy and do not justify the department's regulation respecting annuities. The technical language of ORS 316.047 does not cover the present factual situation. It follows that the adjustment made by the auditor in this case must be reversed and that the part of Reg. 316.047 on which the auditor based his adjustment is void because it exceeds the statute. *Van Ripper v. Liquor Cont. Com.*, 228 Or 581, 365 P2d 109 (1961).

The department itself recognizes that ORS 316.047 does not cover many situations created by the 1969 Act. It states in its "General Rule" in the regulation:

"This section does not require that every item of income and expense be adjusted so that over the period of an individual's life, during which he is subject to Oregon law and the federal Internal Revenue Code, all income and deductions are brought into complete harmony. * * *"

The court finds that the plaintiffs' federal income tax report of their annuity for Oregon income tax purposes must be accepted as filed.

The next matter to be considered is the status of a federal tax payment of $19,689.20 taken on the 1968 Oregon return for federal income taxes paid. The Department of Revenue's auditor ascertained that this represented a late payment of federal taxes for the years 1963, 1964 and 1965 under a federal audit adjustment for those years and the income represented thereby was never reported to the State of Oregon. Because of the statute of limitations, Oregon could not impose a tax upon this income at the time it was discovered and, consequently, the deduction was disallowed under ORS 316.315(1)(f) as a deduction of federal tax on income not taxed by Oregon. The Department is affirmed on this issue.

A sum of $3,969.22 was added to the Oregon income tax return for 1968 as a federal tax refund representing income previously deducted by the taxpayers; however, the parties stipulated in court that the amount represented a refund of tax paid on income not taxed by Oregon and consequently could not be deemed income to the taxpayers for Oregon purposes. This is a recovery exclusion covered by ORS 316.355 (1965 Replacement Part).

A mathematical error was made in the adjustment of the 1968 income tax return in that the auditor conceded that $2,709.24 of real estate taxes were deductible on the Oregon return for that year but he failed to include this amount in the total of deductions allowed. The fact of the failure was stipulated in court and the necessary adjustment must be made.

A form of decree shall be prepared by the defendant with necessary computations pursuant to the court's determination of the issues.