# EQUITABLE SAVINGS & LOAN ASSOCIATION
## *v.* DEPARTMENT OF REVENUE

Joseph J. Hanna, Jr., Cake, Hardy, Buttler, McEwen & Weiss, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision on stipulated facts partly for defendant and partly for plaintiff rendered November 25, 1974.

JOHN L. LUVAAS, Judge pro tempore.

Plaintiff appeals from the Department of Revenue's Order No. I-73-29, dated June 5, 1973, assessing additional corporation excise taxes for the tax years ending December 31, 1967, 1968, 1969 and 1970, and denying a refund claim for the year ending December 31, 1970.

The facts have been agreed upon by pleadings and stipulation, but a succinct summary is proper. At all times relevant to this suit, plaintiff was, and is, a savings and loan association organized and existing under the laws of the State of Oregon, having its principal place of business in Portland, Oregon. Plaintiff's principal source of business income is interest received, principally from loans secured by first mortgages on real property. At all times herein relevant, plaintiff was engaged in the business of making loans upon real property in the states of Oregon, Washington, Idaho and California. The plaintiff is qualified to do business in these states, except California where it is registered to transact business. Mortgage loans made in the states of Washington and Idaho during the above described period were originated and processed in branch offices of plaintiff located in those respective states. Mortgage loans made in California during the period were primarily loans inspected by and closed in the Los Angeles area by the plaintiff's officers and employees. Some loans made in California were obtained through mortgage brokers who were generally residents of the State of California with their places of business there. Loans made in other states, as described above, were secured by real property located in those states and were generally made to borrowers who were not residents or citizens of Oregon.

It is stipulated that for the tax years in question

the facts are identical to those before the Oregon Supreme Court in the case of *Equitable Savings & Loan v. Tax Com.*, 251 Or 70, 444 P2d 916 (1968), except that plaintiff now has branch offices in southwest Washington and Idaho and the amount of loans outstanding in Washington, California and Idaho are greater in amount than at the time of the prior case.

The Federal Savings & Loan Insurance Corporation's secondary reserve payment has not been required to be paid since 1970. For all relevant years the plaintiff did pay a business and occupation tax in Washington and a corporate income tax in Idaho, but was not required to pay any tax in California or Hawaii.

The method of apportionment used and followed by the plaintiff in reporting its multi-state income to Oregon has been consistently followed for all years in question and prior thereto. The defendant, prior to the year 1970, consistently accepted the use of loans in the property factor of plaintiff, the only challenge being that more loans should have been included therein. That challenge was unsuccessful, *Equitable Savings & Loan v. Tax Com., supra.*

Three issues are presented by plaintiff for consideration by this court. First, the plaintiff protests the prospective application of the three-factor formula adopted by the Department of Revenue for the 1970 tax year for apportioning the income of financial institutions doing business within and without the state. Second, the plaintiff protests the disallowance of the Federal Savings and Loan Insurance Corporation's secondary reserve expense deduction for 1967, 1968

and 1969. Finally, in the alternative, plaintiff protests the denial of a refund claim for the year 1970 for taxes paid in the event that it is determined that the FSLIC secondary reserve payment is not deductible.

## PROPRIETY OF NEW FORMULA

Initially, it is important to establish that the plaintiff has the burden of showing that the regulations adopted by the Department of Revenue are improper. See *Zale-Salem, Inc. v. Tax Com.*, 237 Or 261, 391 P2d 601 (1964); *White Stag Mfg. Co. v. Tax Com.*, 232 Or 94, 373 P2d 999 (1962); and *Dutton Lbr. Corp. v. Tax Com.*, 228 Or 525, 365 P2d 867 (1961). In addition, ORS 305.427, states that the burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation. ORS 305.427 also establishes the severity of the burden: "In all proceedings before the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof." It is, therefore, established that the plaintiff need show, by a preponderance of the evidence, that the Department of Revenue has acted improperly in the three issues for determination.

The major statute involved in the first issue is ORS 314.280, which reads as follows:

"(1) If a taxpayer has income from business activity as a financial organization or as a public utility (as defined respectively in subsections (4) and (6) of ORS 314.610) which is taxable both within and without this state (as defined in subsection (8) of ORS 314.610 and in ORS 314.615), the determination of net income shall be based upon the business activity within the state, and the department shall have power to permit or require either the segregated method of reporting or the

apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the department that method will be accepted as the basis of allocation."

The problem of the apportionment formula will be considered first. Prior to examination of the formula, it is necessary to consider the need for a formula. The statute ORS 314.280 states that the department has the power to permit or require either the segregated method or the apportionment method of reporting under rules and regulations so as *fairly and accurately* to reflect the net income of the business done within the state. It is clear then that the purpose of an apportionment formula is to correctly allocate the income of a multistate corporation. It is relatively easy to recognize the difficulty in the allocation of income when a corporation operates in more than one state without establishing lines of division between the operations in various jurisdictions. Factors that may enter into the determination of the location of earned income, in the present case, include the location of the security, the jurisdiction which provides enforcement facilities, the area in which the money is earned to cover the interest on the obligations, the location of receipt of the interest payments, the physical plant of the lending

institution, and the personnel involved in the administration of the financial institution.

The formula which plaintiff alleges is the proper one to be applied for the tax year 1970 is that contained in the prior regulations of the Department of Revenue. That formula was examined in the earlier case involving these parties, *Equitable Savings & Loan v. Tax Com.*, 251 Or 70, 444 P2d 916 (1968). The previous apportionment formula for financial organizations was stated in the department's regulation, Reg 314.280-(E) (1965), which read, in part, as follows:

> "After deducting the nonapportionable income, the remainder will ordinarily be apportioned to this state by giving equal weight to three factors.
>
> "For financial organizations, the three factors ordinarily will be gross loans (in lieu of property), payroll and gross interest."

The contested regulation, Reg 314.280-(E) (1969), reads, in part, as follows:

> "After deducting the nonapportionable income, the remainder will ordinarily be apportioned to this state by giving equal weight to three factors.
>
> "For a financial organization, the three factors will be payroll, property and gross revenue."

A cursory examination of the two regulations makes it apparent that the new regulation has substituted property for the gross loans included in the old regulation. It is this substitution which the plaintiff attacks in its complaint. The plaintiff has presented numerous theories to substantiate its claim that the new regulation should be overthrown in favor of the previous one.

Prior to examination of the plaintiff's claims, it may prove beneficial to examine the original *Equitable*

case, *supra*. It must be noted that the former *Equitable* case dealt with excise taxes for the years 1958 through 1962 and was based on a statute which was amended in 1965 (Or Laws 1965, ch 152, § 22). For the purposes of this case, however, there is little difference in the two statutes. The Supreme Court in that case first held that *Equitable* was indeed engaged in a multi-state business and it was, therefore, clear that the plaintiff was entitled under ORS 314.280 to apportion its income. The Tax Commission contended that (a) plaintiff was a domestic corporation dealing in intangibles, (b) the rule of mobilia sequunter personam applied, and (c) under that rule, the commission could tax income from intangibles at the domicile of a domestic corporation. The Supreme Court, following the decision of the Tax Court, held that although the maxim of mobilia sequunter personam may be applicable under other circumstances, it was entirely irrelevant in the case under consideration. The court, therefore, held that the Tax Court properly apportioned the plaintiff's unitary income in accordance with the statute and the plain meaning of the commission's own regulations. The subsidiary holding concerning the secondary reserve payments will be discussed subsequent hereto when the question is examined for purposes of the present case.

■ Plaintiff initially alleges that a regulation contrary to the statute under which it is subservient may not stand. As a legal maxim, this is indeed a correct statement. *United States v. Cartwright,* 411 US 546, 93 S Ct 1713, 36 L Ed2d 528 (1973); *General Motors Corp. v. Dist. of Columbia,* 380 US 553, 85 S Ct. 1156, 14 L Ed2d 68 (1965); and *Bronson v. Dept. of Rev.,* 5 OTR 86 (1972). A point not considered by

the plaintiff, however, is that, in situations of apportionment, no one formula will likely be held to be the *only* formula which fulfills the requirements of the statutory scheme. The Oregon Supreme Court in *Dutton Lbr. Corp., supra,* stated the proposition most succinctly, at 538:

"We have been cited to no cases, nor has our own search discovered any, wherein one formula of apportionment has been held superior to another. The only limitation imposed upon a given state seeking to levy an excise tax against a foreign corporation doing business in that state is the rule laid down in *Butler Bros. v. McColgan,* [315 US 501, 62 S Ct 701, 86 L Ed 991 (1942)] * * * *i.e.,* that the formula of apportionment will 'fairly and accurately * * * reflect the net income of the business done within the state.' No preference of the kind or number of economic factors employed is indicated, if the result fairly and accurately indicates the income from 'business done within the state.' "

The court, in *Dutton,* also stated the Tax Commission was not admonished to choose its business factors in terms of their relative size as they appear in Oregon. Yet the Supreme Court was mindful that the taxing power being exerted by the state should bear some "fiscal relation to protection, opportunities and benefits given by the state." Furthermore, in *Hines Lumber Co. v. State Tax Com.,* 215 Or 453, 336 P2d 75 (1959), the Oregon Supreme Court stated a rule directly applicable in this case: the question is not whether another formula is reasonable but rather whether the one chosen by the Department of Revenue is reasonable. The statute does not require an exact apportionment. Such an apportionment would, indeed, be impossible, it only requires a reasonable approximation. The plaintiff's contention that since the Oregon Su-

preme Court in *Equitable Savings & Loan, supra,* approved the prior regulation as a reasonable apportionment of the plaintiff's income, and since that formula has been consistently followed by plaintiff and accepted by defendant until 1970, any other formula promulgated by the Department of Revenue should be held to be contrary to the *Equitable* case, is without merit. See also *General Motors Corp., supra,* and *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 US 123, 51 S Ct 385, 75 L Ed 879, 1 CCH STC 148, para 256 (1931). The Supreme Court in the latter case laid down a criterion for judicial appraisal for such formulas when it said, at 133:

> "* * * The difficulty of making an exact apportionment is apparent and hence, when the state has adopted a method not intrinsically arbitrary, it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases. But the fact that the corporate enterprise is a unitary one, in the sense that the ultimate gain is derived from the entire business, does not mean that for the purpose of taxation the activities which are conducted in different jurisdictions are to be regarded as 'component parts of a single unit' so that the entire net income may be taxed in one state regardless of the extent to which it may be derived from the conduct of the enterprise in another state. * * *"

In that decision, the court held that relief would be given where the evidence clearly showed that an apportionment formula based on the real and personal property of the taxpayer reached an unreasonable result when it was applied to a foreign corporation.

▮ The plaintiff places great emphasis on statements in various cases that regulations which have been in effect for long periods of time become highly persuasive and should be given much weight. *Bumble*

*Bee Seafoods v. Tax Com.,* 245 Or 442, 421 P2d 974 (1966), citing *Keyes v. Chambers et al,* 209 Or 640, 661, 307 P2d 498 (1957), for the proposition that

"* * * [a]lthough * * * [the] rules promulgated by the Tax Commission * * * are not controlling, their contemporaneous construction of an act is, nevertheless, highly persuasive, especially where such rules have been in effect for a long term of time as a basis for determining technical and involved matters * * *."

See also *Holyoke Mutual Fire Insurance Co.,* 28 TC 112 (1957). The plaintiff has cited the above cases inappropriately. While it is true that regulations which have been in effect for a long period of time become highly persuasive, these cases do not hold that the administrative agency may not change the long-enacted regulations. As will be pointed out subsequently, the administrative agency needs to be relatively free to adjust its published formula to adapt it to new situations and the light of experience.

The plaintiff states that tax statutes must be strictly construed against the authorities and liberally construed for the plaintiff. *Crook v. Curry County,* 206 Or 350, 292 P2d 1080 (1956), and *Tuttle v. Beem,* 144 Or 145, 24 P2d 12 (1933). While this statement is generally accepted, its application to the present case remains obscure, given the general language of the statute conferring regulatory power on the Department of Revenue.

Defendant points out that there is a moratorium now in effect and that no savings and loan association can be taxed in California unless its principal office is in the state. Defendant appears to profess that Oregon could tax all the income of the

plaintiff, although the present regulation does not have that effect. It is necessary to point out that the statute, ORS 314.280, requires that the rules and regulations adopted by the department "fairly and accurately" reflect the net income of the business done within the state and that the State of Oregon tax on a "fair and equitable basis" a proportion of such income earned from sources both within and without the state. The contention that Oregon now has a free hand, since the moratorium is in effect, is completely inappropriate, given the language of ORS 314.280 and ORS 314.620.[1] See also *Amer. Refrig. Transit Co. v. Tax Com.*, 238 Or 340, 395 P2d 127 (1964), which states that the equal protection clause of the Fourteenth Amendment of the United States Constitution requires a reasonable and not arbitrary basis for taxation.

■ Defendant has suggested that the regulations promulgated by the Department of Revenue under ORS 314.280 constitute legislative rules rather than interpretive regulations. Differentiation of interpretive versus legislative is indeed important in ascertaining the court's position regarding the regulation dealing with the apportionment formula. According to Davis, *Administrative Law Treatise* § 5.03 (1958), a legislative rule is valid and is as binding on the court as a statute if it is: (a) within the granted power; (b) pur-

---

[1] ORS 314.620 *When taxpayer is considered taxable in another state.* For purposes of allocation and apportionment of income under ORS 314.280 and 314.605 to 314.675, a taxpayer is taxable in another state if:

(1) In that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or

(2) That state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not.

suant to proper procedure; and (c) reasonable. On the other hand, interpretive regulations hold the force of law, depending on: (a) the court's agreeing with the rule; (b) the extent to which the subject matter is within the special administrative competence of the rule-making body and beyond judicial competence; (c) whether the rule is a contemporaneous construction; (d) whether the rule is of long standing; and (e) whether the statute has been reenacted by legislators who know of the content of the rule. Davis, *supra,* states the question whether a rule is legislative or interpretive thus depends upon whether or not it is issued pursuant to a grant of law-making power. Citing *Addison v. Holly Hill Fruit Products,* 322 US 607, 64 S Ct 1215, 88 L Ed 1488, 153 ALR 1007 (1944), where the statute read in part "within the area of production (as defined by the administrator)  *  *  *," Davis presents this as an example of legislative regulation. A second example is given in the case of *American Teleph. & Teleg. Co. v. United States,* 299 US 232, 57 S Ct 170, 81 L Ed 142 (1936), where the statute read "the Commission may, in its discretion, prescribe the forms of any and all accounts  *  *  *."

It is difficult to grasp the difference between interpretive and legislative regulations but it appears that some statutes convey to the administrative body direct orders or permission to define or implement a portion of the statute, whereas other regulations draw no direct sanction from the statute but rather are permitted under general administrative law precepts to aid others in understanding the administrative body's separate interpretation of the meaning of the statute. The regulations under the former type of statute appear legislative and the latter interpretive.

■ Comparing ORS 314.280 with the examples contained above, it is relatively clear that the statute sanctions legislative regulations. The statute states: "* * * the department shall have the power to permit or require * * * *under rules and regulations adopted by the department, * * *.*" [Emphasis supplied.]

In *Amer. Teleph. & Teleg. Co., supra,* the United States Supreme Court described the scope of judicial review in dealing with a legislative regulation, at 236-237:

"* * * What has been ordered must appear to be 'so entirely at odds with fundamental principles of correct accounting' * * * as to be the expression of a whim rather than an exercise of judgment. * * *"

Referring to the *Addison* case, *supra,* Davis says that because the regulation was legislative, the court had no power to substitute its judgment for that of the administrator concerning the meaning of "area of production." The court could determine whether the administrator acted in excess of the granted power but could not itself exercise the granted power. It appears, therefore, that this court may and should examine the new formula to see if it meets the standards required by ORS 314.280, "fairly and accurately to reflect the net income of the business done within the state." But if this court finds that the formula does not meet the test of that statute, but rather is an expression of a whim, then the formula must be rejected but cannot by this court be redrawn.

■ It is, therefore, probable that once the legislative delegation of power is exercised by the Department of Revenue, that power does not become frozen. To carry out the mandate of ORS 314.280, that the rules

and regulations reflect accurately and fairly the business done within the state, the Department of Revenue does indeed need to constantly reassess the apportionment formula which it is currently employing. To rule that the formula could not be either altered or reexamined subsequent to initial promulgation would be to bar the department from adjusting a formula which had subsequently been found to be inaccurate. The U. S. Supreme Court in *Helvering v. Wilshire Oil Co.*, 308 US 90, 60 S Ct 18, 84 L Ed 101 (1939), stated at 100-101:

"* * * It does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers. * * * The contrary conclusion would not only drastically curtail the scope and materially impair the flexibility of administrative action; it would produce a most awkward situation. Outstanding regulations which had survived one Act could be changed only after a preview by the Congress. * * *"

Based on this, the plaintiff's argument of reenactment of the statute preventing the department from changing the regulations is not persuasive. See also *Helvering v. Reynolds*, 313 US 428, 61 S Ct 97, 85 L Ed 1438 (1941), where the Supreme Court stated, at 432:

"* * * While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change. * * * It gives way before changes in the prior rule or practice through exercise by the administrative agency of its *continuing rule-making power*. * * *" (Emphasis supplied.)

It must be concluded that the Department of Revenue can amend its regulations under ORS 314.280, even though such regulations are of long-standing duration and are adopted under a statute which has been frequently reenacted by the legislature. *Cf. Holyoke, supra,* and *United States v. 525 Co.,* 342 F2d 759 (5th Cir 1965), 15 AFTR2d 592.

The real question for determination by the court has thus become consideration of the new formula, involving property, wages and interest—is it a proper allocation under the general requirements of the statute relating to fair and accurate reflection of income on business done within the state. This question requires the analysis of the various factors which contribute to the allocation formula. Since both parties agree that the payroll and interest factors remain the same in the new formula, the discussion centers on the effective difference between the former "gross loans" factor and the new "property" factor. Initially, it is apparent that there is, as defendant suggests, little difference between the former "gross loans" factor and the former "interest" factor. Since interest is a direct result of the loan, there are likely only minor differences in percentages involving the two factors. In 1970, the "gross loans" factor was apparently 54.03% and the "interest" factor 53.49%.

It would not appear that plaintiff has any vested interest in retaining the loan factor as one of three factors in a formula. Plaintiff does not apparently contend that it does but contends that removal of the loan factor which is an intangible personal property results in the property factor including only tangible real and personal property; whereas, for other types of business the property factor, although it includes only

tangibles, generally includes inventory. Plaintiff's contention, in essence, is that its inventory is its intangible loans and that it is entitled to have such intangibles included in the property factor or in a third factor formerly known as the loan factor.

To be sure, the intangible loans could have been included in the formula of the Department of Revenue. Such inclusion might actually have been more fair to plaintiff than the exclusion of intangibles. Under the Uniform Division of Income for Tax Purposes Act the property factor includes only real and tangible personal property. ORS 314.655. Many taxpayers engaged in interstate business own intangibles. They are not included in the statutory formula. Failure to include such intangibles in the property factor has not been shown to be an unconstitutional discrimination against plaintiff and is found to be within the discretionary authority of the department.

Plaintiff suggests that the new formula including property causes a double reflection because of the inclusion of the payroll factor. The court cannot agree that payroll necessarily reflects the tangible property of the plaintiff. Tangible property frequently replaces payroll. A costly computer may require only one operator but replaces many employees. The payroll factor is frequently minimized by a substantial investment in labor-saving equipment. This was not, necessarily, the case to the same degree when the former apportionment formula was adopted. It cannot be denied that property does contribute to the earnings of plaintiff. It was proper for the department to consider the contribution of tangible property in relation to the other aspects of the business which generate income. Any double reflection in the "payroll" factor and the "prop-

erty" factor would appear to be substantially less than the double reflection between the former "gross loans" factor and the former "interest" factor.

Oregon clearly offers benefits and protection to the plaintiff by harboring the majority of the tangible property owned by the plaintiff. Likewise, payroll of plaintiff's employees should be and is reflected in the new formula. Allegations concerning the enforcement and the interest accumulation environment appear to be provided for by the inclusion of the "interest" factor in the new formula. While it is possible that too much income is allocated to Oregon by the operation of the new formula, plaintiff has in no way exhibited that.

A major contention of the plaintiff is that the new allocation formula is unconstitutional under the equal protection clause of the Fourteenth Amendment of the United States Constitution. As plaintiff states, the equal protection clause does, indeed, apply to corporations. *Standard Lbr. Co. v. Pierce, et al.,* 112 Or 314, 228 P 812 (1924). Or Const. Art I, § 32, and Art IX, § 1, require that all taxation must be uniform on the same class of subjects. It is clear from cases such as *Redfield et al. v. Fisher, et al.,* 135 Or 180, 292 P 813, 295 P 461 (1930), and *Amer. Refrig. Transit Co., supra,* that purely arbitrary discrimination between taxpayers, in this case domestic and foreign financial institutions, is impermissible. Plaintiff, however, presents no evidence that such discrimination has occurred in this case. It is uncontested that the same formula applies to both domestic and foreign financial institutions. Plaintiff places some reliance on an example which it contends illustrates the discrimination in the new formula. The example purportedly proves that two identical savings and loan associations, one with its home office in Ore-

gon, and the other with its home office located outside of Oregon, would have a completely different tax situation, the domestic paying tax on 100 percent of its income to Oregon and the foreign paying tax on only 50 percent of its income to Oregon, under the new method of taxation of the defendant. The example appears to be naive concerning the importance of the location of the home office of a foreign savings and loan association. The plaintiff assumes that the foreign state in which the home office is located provides absolutely no benefit or protection to the savings and loan association. Without considering the payroll factor, which the plaintiff has ignored, the plaintiff has only shown that the incidence of tax is *different* but not necessarily *discriminatory* when the foreign savings and loan makes all its loans within Oregon. Plaintiff apparently would, in its example, allocate no income for tax purposes to the foreign state in which the savings and loan association is located. It is not established that the new formula is less correct or more discriminatory than the preceding formula.

Plaintiff has alleged that under the provisions of ORS 314.280(2) it has submitted an alternative method for purposes of allocation. That statute reads in part:

"* * * If approved by the department that method will be accepted as the basis of allocation."

The department clearly has discretion, granted explicitly by the legislature, for acceptance of alternative methods. The plaintiff has not shown that the department has stepped beyond the ambit of propriety or has abused the trust of the legislature in failing to approve the alternative method.

## DEDUCTIBILITY OF FSLIC SECONDARY RESERVE PAYMENTS

The second major contention of plaintiff is that the secondary reserve payments which it has made to the FSLIC should be deductible as a normal and necessary business expense. For this proposition, it cites *Equitable, supra.* The Department of Revenue counters with a subsequent U. S. Supreme Court opinion in *Commissioner v. Lincoln Savings & Loan Assn.,* 403 US 345, 91 S Ct 1893, 29 L Ed2d 519 (1971), which held that for federal income tax purposes these same secondary reserve payments were not deductible as ordinary and necessary business expenses. The actual question of whether these payments meet the definition of expense within the meaning of ORS 317.255(1) is not reached by this court, given the decision in *Equitable, supra.* In that case, the Oregon Supreme Court held that the payments involved were deductible as an expense by the plaintiff, even though the payment resulted in a contingent interest in a specified fund. The Supreme Court said:

"'* * * The fact that it [Equitable] may receive some benefit from the secondary reserve some time in the future if certain events transpire should not affect its [Equitable] right to deduct both payments as an expense at this time. * * *'" (251 Or, at 80.)

46 Am Jur 2d, *Judgments* § 415 (1969), states as follows:

"* * * Indeed, it is a fundamental principle of jurisprudence that material facts or questions which were directly in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent ac-

tion between the same parties or their privies, regardless of the form that the issue may take in the subsequent action. \* \* \*"

However, at § 416, the statement is made as follows:

"There are cases stating that the doctrine precluding the relitigation of issues previously adjudicated in an action on a different cause of action, is confined to issues of fact or, at least, to mixed questions of fact or law, and thereby excluding questions of law from the operation of the doctrine. \* \* \*"

No case has been brought to the court's attention which precisely holds that a state court is required to change its construction of its own statute because of a subsequent contrary construction of a like federal statute, based on which the state statute was adopted, by the United States Supreme Court.

The cases involving the rules of construction when parallel federal and state statutes are involved seem to fall into three categories:

*Category 1:*

A. A federal statute is first enacted.

B. Then a similar state statute is enacted.

C. Followed by a federal court construction of a federal statute.

*Category 2:*

A. A federal statute is first enacted.

B. Then a federal court construes the federal statute.

C. Followed by the enactment of a similar Oregon statute.

*Category 3:*

A. A federal statute is first enacted.

B. A similar Oregon statute is then enacted.

C. An Oregon court construes the Oregon statute.

D. Then a federal court construes the federal statute.

In regard to Category 1 above, it would appear that the Oregon court is not bound by the federal decision but that such decision would be, indeed, persuasive. *Prentice v. Commission,* 2 OTR 215, 218 (1965).

In regard to Category 2 above, the Oregon Tax Court has held in *Southern Oregon Health Serv. v. Commission,* 3 OTR 283, 287 (1968), that an Oregon court is bound by the prior federal decision when the similar Oregon statute was enacted after the federal decision. See also, *State v. Burke,* 126 Or 651, 269 P 869, *reh. den.* 126 Or 651, 270 P 756 (1928), which case was cited in the defendant's brief.

Category 3 above involves the facts in the instant case. The most any court heretofore has been willing to hold when the federal decision occurred after the enactment of the state statute is that such decision is persuasive. See *Prentice, supra.* Obviously, if you add to that sequence of events a state Supreme Court decision prior to the federal decision—you have at best (and probably something less than) persuasiveness that should be given to the federal decision and— clearly, the Oregon court would not be bound by the federal decision.

One case from another jurisdiction (*Anderson v. Commissioner of Taxation,* 93 NW2d 523, 532 (Minn 1958)) which clearly supports conclusion, said:

"In cases where the state tax statute is substantially the same as the Federal statute, the construction of the Federal act prior to its adoption by

the state is deemed controlling in construing the state statute. * * * Although Federal cases subsequent to our adoption of the income tax laws of 1933 are not necessarily controlling on this court, they are of persuasive value where we have no decisions to the contrary."

Whether the procedure for barring relitigation of questions is termed res judicata or collateral estoppel is of little consequence. It appears that collateral estoppel should apply in the present case. The plaintiff cites *Gwynn v. Wilhelm*, 226 Or 606, 360 P2d 312 (1961), and *Western Baptist Mission v. Griggs*, 248 Or 204, 433 P2d 252 (1967), for the proposition that the doctrine of collateral estoppel applies in the present case. While there is some doubt as to the quality of these citations, the doctrine of collateral estoppel does, prima facie, appear to apply. *Cf. Commissioner v. Sunnen*, 333 US 591, 68 S Ct 715, 92 L Ed 898 (1948).

Assuming, arguendo, that the doctrine of collateral estoppel does not apply, the minimum response of this court need be to adhere to the precedent of *Equitable, supra*, and follow the doctrine of stare decisis. Therefore, although there has been a U. S. Supreme Court case involving an analogous point, *Lincoln Savings & Loan Assn., supra*, it is not for this court to make a finding in derogation of *Equitable, supra*. To do so would be a step toward the destruction of the rule of precedent.

## REFUND ON 1970 TAX

The third issue presented by plaintiff, the refund for tax paid in 1970 on the transfer of secondary reserves in 1970, is not reached since the secondary reserves are deemed deductible. Prima facie it appears

that the refund should be granted if the original payments to the secondary reserve fund were not deductible. The subsequent transfer to the primary reserve would therefore be in soft, after tax, dollars requiring that only interest on the money be taxed.

## CONCLUSION

In conclusion, it does not appear that the new formula of apportionment improperly allocates income to Oregon for tax purposes. Any resulting increase in taxation is *not* tantamount to an improper allocation. The preponderance of the evidence apparently supports the department in its contention that the new formula is an accurate and fair allocation of income of business done within and without this state. The plaintiff makes some issue of the fact that the legislature did not see fit to amend ORS 314.280 during the period in which the prior regulations were in effect. By this fact, the plaintiff reads legislative approval for that prior regulation. As Justice Learned Hand said in *F. W. Woolworth Co. v. United States,* 91 F2d 973 (2d Cir 1937), 20 AFTR 205, at 976:

"* * * To suppose that Congress must particularly correct each mistaken construction under penalty of incorporating it into the fabric of the statute appears to us unwarranted; our fiscal legislation is detailed and specific enough already. * * *"

The plaintiff has not proven, regarding the apportionment formula, that the new regulations are "the expression of a whim rather than the exercise of judgment." *American Teleph. & Teleg. Co., supra,* at 236-237.

The secondary reserve payments appear deductible under the rule of *Equitable, supra,* and, therefore, the

question of a refund on the taxes on transferred funds is not reached.

The order of the Department of Revenue denying deductibility of the FSLIC payments into the secondary reserve for the years in question and the order and assessment of the Department of Revenue in that regard is set aside.

The order of the Department of Revenue in denying the refund claimed for 1970 is affirmed.

The apportionment formula adopted by the Department of Revenue for 1970 is approved.