Argued June 4, affirmed July 3, petition for rehearing
denied August 6, 1975

# EQUITABLE SAVINGS AND LOAN ASSOCIATION, *Respondent and Cross-appellant, v.* DEPARTMENT OF REVENUE, *Appellant and Cross-respondent.*

537 P2d 538

*G. F. Bartz,* Assistant Attorney General, Salem, argued the cause for appellant and cross-respondent. With him on the briefs were Lee Johnson, Attorney General, and Theodore W. deLooze, Chief Tax Counsel, Salem.

*John R. Faust, Jr.,* Portland, argued the cause for respondent and cross-appellant. With him on the brief were Joseph J. Hanna, Jr., and Hardy, Buttler, McEwen, Weiss & Newman, Portland.

O'CONNELL, C. J.

This is an appeal from a decree of the Oregon Tax Court.[①] Defendant Department of Revenue appeals from that portion of the decree allowing the deduction of plaintiff's payments to the Federal Savings and Loan Insurance Corporation's (FSLIC) Secondary Reserve Account in 1967-1969 as an ordinary and necessary business expense. (ORS 317.255). Plaintiff taxpayer cross-appeals from that portion of the decree refusing to declare invalid defendant's 1970 regulation amending the apportionment formula for the determination of the income of a multi-state financial institution attributable to Oregon.

[①] Equitable Savings & Loan v. Dept. of Revenue, 5 OTR 661 (1974).

The facts relevant to defendant's appeal are not in dispute and are, for the most part, stipulated to be the same as those set forth in *Equitable Savings & Loan v. Tax Com.*, 251 Or 70, 444 P2d 916 (1968), which also involved the deductibility of plaintiff's payments to the FSLIC.

Plaintiff is an Oregon corporation with its headquarters and principal place of business in Portland. Plaintiff's depositors' accounts, up to a maximum amount per account, are insured by the FSLIC.[2] During the period in question, plaintiff was obligated to pay two fees to the FSLIC.[3] The first was denominated a "premium" and was equal to 1/12 of one per centum of the value of plaintiff's accounts plus creditor obligations. This so-called premium was credited to FSLIC's primary reserve, which is used to pay losses and operation expenses.[4] The second payment was denominated an "additional premium," and "in the nature of a prepayment with respect to future premiums of the institution."[5] The additional premium was set at two per cent of the net increase in the total of the institution's insured accounts and was assessed when FSLIC's aggregate reserves fell below 1¾ per cent of total accounts and creditor obligations. The payments were credited to the "secondary reserve account," which was available only for the FSLIC's losses and then only if the other reserves were insufficient. If the aggregate of reserves rose above two per cent of deposits and creditor obligations, the

---

[2] For a detailed discussion of the history and operation of the system see Comment, The FSLIC Additional Premium Requirement and Its Treatment under the Internal Revenue Code, 60 Ky L Rev 397 (1972). The insurance has risen from $5,000 for each account at the inception of the program to $40,000 at the present time.

[3] 12 U.S.C. § 1727. See, *Id.*, at 402-403.

[4] 12 U.S.C. § 1727(a) (1968).

[5] 12 U.S.C. § 1727(d)(2) (1968). Assessment of additional premiums was prohibited by Congress in 1973. Pub. L. 93-100(d).

additional premium payments ceased and each insured institution's pro rata share of the secondary reserve was used to discharge the institution's obligation to pay the primary reserve premium. If, at the end of any year, the primary reserve itself reached two per cent of accounts and creditor obligations, the FSLIC was to pay in cash to each insured its pro rata share of the secondary reserve, including interest at the average rate received on all FSLIC investments. It was expected, however, that the primary reserve would reach two per cent toward the end of this century and that the secondary reserve previously would have been exhausted through transfers to the primary reserve.[6]

In addition to the possibility of refund through full capitalization of the FSLIC, insured institutions retained a few limited incidents of ownership in their secondary reserve accounts. The accounts were transferrable only in the event of merger, consolidation, liquidation, or termination of coverage with the FSLIC which, as a practical matter, would result in withdrawals sufficient to destroy the institution's solvency. In effect, the only right possessed by an insured institution which remained sound and retained its corporate identity was to await automatic transfer of its account to the primary reserve and the consequent reduction of a future liability.

Based upon this limited nature of these rights, plaintiff contended that its secondary reserve payments in 1962 were ordinary and necessary expenses of its business deductible from its income for purpose of Oregon taxation. Defendant's predecessor, the Oregon Tax Commission, following the lead of the federal Internal Revenue Service, took a contrary view, and the dispute culminated in litigation eventually decided

[6] See Commissioner v. Lincoln Savings & Loan Asso., 403 US 345, 351, 91 S Ct 1893, 29 L Ed2d 519, n. 7 (1971).

in plaintiff's favor in 1968.[7] Federal trial and intermediate appellate courts uniformly decided that the payments were deductible under similar federal law.[8]

In 1971, however, the United States Supreme Court, in the case of *Commissioner of Internal Revenue v. Lincoln Savings & Loan Asso.*, 403 US 345, 91 S Ct 1893, 29 L Ed2d 519, held that the FSLIC secondary reserve was an asset reserve and that payments by insured institutions were capital items not deductible in the year of payment under a federal tax statute essentially identical to ORS 317.255.

Defendant contends that the characterization of the secondary reserve payments is a matter of federal law on which the opinion of the United States Supreme Court is controlling. Plaintiff contends that the question is not the nature of the payments as a matter of federal banking law but their nature in terms of tax law. Since the construction of the Federal Tax Code does not control our construction of Oregon's tax laws, plaintiff argues that there is no reason for us to reconsider our prior decision.

■ We agree with plaintiff that the question before the United States Supreme Court in the *Lincoln* case was solely one of tax law. The court did not purport to say that its treatment of the payment into the secondary fund as a capital expenditure was to have any effect aside from the tax consequence. From this standpoint, therefore, the *Lincoln* decision need not control the treatment of the payments under Oregon law. However, defendant advances other reasons

[7] Equitable Savings & Loan v. Tax Com., 251 Or 70, 444 P2d 916 (1968).

[8] Lincoln Savings & Loan Asso. v. Comm'r. of Internal Revenue, 422 F2d 90 (9th Cir 1970), rev., 403 US 345 (1971); Washington Federal Savings & Loan Asso. of Miami Beach v. United States, 304 F Supp 1072 (S.D. Fla 1969); and First Federal Savings & Loan Asso. of St. Joseph v. United States, 288 F Supp 477 (W.D. Mo 1968).

for following the *Lincoln* case. We are reminded that Oregon's corporate excise tax statutes generally are designed to be applied in the same manner as the corresponding federal statutes.[9] We agree with defendant's statement of our practice in construing such statutes and if this were a case of first impression, we would be inclined to adopt the decision of the United States Supreme Court in *Lincoln* construing the corresponding federal provision.[10]

■ However, this is not a case of first impression, but is in effect a retrial of the same issue as was presented and ruled upon in the 1968 case. In our opinion that issue is an extremely close one. The secondary reserve payments, in some respects, have the characteristics of a prepayment of insurance deductible under defendant's regulations,[11] and in other respects the characteristics of a capital expenditure.[12] Plaintiff retains some theoretical property rights in its secondary reserve account, including the possibility of a cash refund with interest. However these rights are, as a matter of fact, extremely speculative.[13] The characterization of the payments is, then, an extremely close question not susceptible to an indisputably correct answer. Under these circumstances, there is no compelling reason to overrule our previous case. The arguments supporting each side of that controversy on this very narrow question of taxation are fully set out in the

[9] Oregon's relevant tax provision, ORS 317.255, is nearly identical to § 162 of the Internal Revenue Code from which it derived.

[10] Hardwick v. Department of Revenue, 272 Or 100, 535 P2d 89 (1975).

[11] O.A.R. 150.317.255(1)(D). Defendant does not deny the validity of its regulation but disputes its applicability to secondary reserve payments.

[12] FSLIC requires plaintiff to show its secondary account as an asset on its books.

[13] See *Lincoln,* dissenting opinion of Douglas, J., 403 US at 363.

various adjudicated cases and in the comments in legal periodicals.[⑧] Thus, the question of the taxability of the payments into the secondary reserve is fully exposed to legislative scrutiny and action.

We believe that the merits of defendant's argument and the interest in uniformity of state and federal tax concepts in this context of extremely limited applicability are not sufficient to warrant the unusual step of overruling our prior decision, with the consequent encouragement to re-litigate settled questions and to open up a number of apparently final tax returns. We therefore affirm the decision of the Tax Court on defendant's appeal.

■ Plaintiff cross-appeals from the failure of the Tax Court to find defendant's formula for proportioning the income of multi-state financial institutions invalid. The court noted that plaintiff, as the moving party, had the burden[⑨] of showing that the formula adopted by defendant under its rule-making authority does not "fairly and accurately reflect the net income of the business done within the state,"[⑩] and found that plaintiff had not met this burden. We agree with this conclusion and adopt as our own that portion of the opinion of the Tax Court dealing with the cross-appeal.

Affirmed.

---

[⑧] See cases cited in note 8, *supra*. Erbacher, Payments by a Cash Basis Federal Savings and Loan Association to the FSLIC: Are They Deductible?, 35 Mo L Rev 145 (1970); Comment, Taxation: Deductibility of Insurance Premiums by Federal Savings and Loan Associations, 22 U Fla L Rev 675 (1970); Comment, The FSLIC Additional Premium Requirement and Its Treatment under the Internal Revenue Code, 60 Ky L Rev 397 (1972). In 1973, Congress rendered the question moot except for prior tax years through prohibition of collection of additional premiums. Note 5, *supra*.